**BAY STATE MILLING COMPANY,**
Plaintiff,

v.

**TERRANOVA BAKERS SUPPLIES CORPORATION, Defendant.**

No. 92 Civ. 9204 (PKL).

United States District Court,
S.D. New York.

Jan. 3, 1995.

not consider Sulcus or Ryba's other arguments in support of summary judgment or dismissal of these claims.

Howard J. Wasserman, Carlet, Garrison & Klein, New York City.

Paul S. Jason, Cohen Jason & Mascali, Scarsdale, NY.

## MEMORANDUM ORDER

LEISURE, District Judge:

This is an action on a debt. Plaintiff is Bay State Milling Company ("Bay State"), a Massachusetts corporation with its principal place of business in Quincy, Massachusetts. Defendant is Terranova Bakers Supplies Corporation ("Terranova Bakers"), a New York corporation with its principal place of business in Bronx, New York. Bay State seeks to recover for goods that Bay State sold to Terranova Bakers on credit. The amount in controversy exceeds $50,000 exclusive of interest and costs. This Court has subject matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

Bay State has moved for summary judgment. For the reasons stated below, the motion is granted in part and denied in part.

## BACKGROUND

Throughout much of the 1980's, Bay State sold flour goods to Terranova Bakers on credit, and Terranova Bakers worked as bulk transfer agent for Bay State.[1] By 1989, Terranova Bakers had fallen approximately $600,000 behind in its payments to Bay State; however, by November 1991, Terranova Bakers had reduced its indebtedness to $334,546.35.

On November 18, 1991, Bay State and Terranova Bakers executed a written agreement (the "Repayment Agreement"), which purports, *inter alia*, to establish a repayment schedule for Terranova Bakers' indebtedness to Bay State and to require Bay State to name Terranova Bakers as a bulk transfer agent as long as Terranova Bakers was not in default on its payment obligations under the Repayment Agreement.[2] The parties

---

1. The record developed to date includes no written memorialization by the parties of the terms of these credit sales.

2. The Repayment Agreement provides:
   The Undersigned, Terranova Baker's Supply Corporation ("Terranova"), promises to pay to the order of Bay State Milling Company ("Company"), 100 Congress Street, Quincy, Massachusetts 02169, the sum of Three Hundred Thirty-four Thousand, Five Hundred Forty-six dollars and Thirty-five cents ($334,546.35), payable only in same day funds.
   Terranova agrees to pay One Thousand, Nine Hundred dollars and no cents ($1,900.00) every Tuesday to reduce the outstanding balance. The $1,900 weekly payments will cease as soon as the total outstanding balance due the Company is within credit terms. Credit terms are 30 days from the date of shipment, with the total outstanding not to exceed $100,000, including all amounts remaining under this Agreement. Once the $1,900 weekly payments have ceased, the account must be maintained within terms to avoid orders being held. Any change in credit terms, including a change in the maximum exposure limit, would be subject to the standard Company credit review. Credit terms will also be reviewed if the account is not maintained in a current status.

peacefully coexisted pursuant to the Repayment Agreement until October 1992, when Terranova Bakers ceased making payments pursuant to the Repayment Agreement and Bay State allegedly terminated Terranova Bakers' services as a bulk transfer agent.

Bay State filed this action in December 1992, seeking to recover the amount of Terranova Bakers' alleged indebtedness to Bay State. Terranova Bakers in turn filed two counterclaims. The first of these alleges that Bay State fraudulently induced Terranova Bakers to enter into the Repayment Agreement. The second alleges that Bay State breached the Repayment Agreement when it terminated Terranova Bakers' services as a bulk transfer agent.

### DISCUSSION

Bay State argues that it is entitled to summary judgment on the full amount of Terranova Baker's alleged indebtedness or, in the alternative, on those payments that have come due to date pursuant to the Repayment Agreement.

"Summary judgment may be granted if, upon reviewing the evidence in the light most favorable to the non-movant, the court determines that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993). In deciding the motion, "the court is required to draw all factual inferences in favor of the party against whom summary judgment is sought." *Balderman v. U.S. Veterans Administration,* 870 F.2d 57, 60 (2d Cir.1989). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." *Cruden v. Bank of New York,* 957 F.2d 961, 975 (2d Cir.1992); *accord Taggart v. Time, Inc.,* 924 F.2d 43, 46 (2d Cir.1991).

■ The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion" and identifying the materials in the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once a motion for summary judgment is properly made and supported, however, the burden shifts to the nonmoving party to " 'set forth specific facts showing that there is a genuine issue for trial.' " *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)).

■ In a dispute involving a contract's meaning, summary judgment may be granted if the contract's language is plain and unambiguous. *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 148 (2d Cir.1993); *Seiden Assoc., Inc. v. ANC Holdings, Inc.,* 959 F.2d 425, 428 (2d Cir.1992). A contract's language is unambiguous if there is " 'no reasonable basis for a difference of opinion' " as to the contract's meaning. *Hunt Ltd. v. Lifschultz Fast Freight, Inc.,* 889 F.2d 1274, 1277 (2d Cir.1989) (quoting *Breed v. Insurance Co. of North America,* 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352, 385 N.E.2d 1280 (1978)).

■ Bay State first argues that it is entitled to summary judgment on the full amount of Terranova Bakers' alleged indebtedness because, as a matter of law, Bay State's right to repayment arises out of Terranova Bakers' acceptance of the flour goods, not out of the Repayment Agreement. This argument posits that Terranova Bakers became indebted to Bay State when it accepted goods from Bay State and that Bay State received no consideration for entering into the Repayment Agreement. Given these premises, the argument concludes, the Repayment Agreement is not the source of Bay State's right to repayment, pursuant to the pre-existing duty rule, *see generally* E. Allan Farnsworth,

---

So long as Terranova is not in default under this Agreement, the Company agrees to name Terranova as a bulk transfer agent for the term of this Agreement. Deliveries by Terranova shall be at a rate of $.75 per cwt on a minimum load of 480 cwt.

Until the outstanding balance hereunder is within the above stated credit terms, Terranova agrees that all shipments made during each week shall be paid by same day funds on the Friday of such week. ·
Complaint, Exhibit A.

Contracts ("Farnsworth") § 4.21, 287–291 & n. 20 (2d ed. 1990).[3]

However, the record does not support Bay State's premise that, as a matter of law, it received no consideration for entering into the Repayment Agreement. To the contrary, and by way of example only, a reasonable trier of fact could conclude that, upon Bay State's solicitation, Terranova Bakers obligated itself, by entering into the Repayment Agreement, to provide services as a bulk transfer agent to Bay State at a rate of $.75 per cwt.[4] *See, e.g.,* Complaint, Exhibit A (Repayment Agreement: "So long as Terranova is not in default under this Agreement, the Company agrees to name Terranova as a bulk transfer agent for the term of this Agreement. Deliveries by Terranova shall be at a rate of $.75 per cwt ...."). As a result, the Court cannot conclude, as a matter of law, that Bay State received no consideration for entering into the Repayment Agreement. The source of Bay State's right to repayment may thus be the Repayment Agreement, rather than Terranova Bakers' acceptance of the goods. Bay State is therefore entitled to summary judgment only to the extent that it would be so entitled if the Repayment Agreement, not Terranova Bakers' acceptance of the goods, were viewed as the source of Bay State's right to repayment.

Terranova Bakers argues that Bay State is not entitled to summary judgment pursuant to the Repayment Agreement because Bay State has itself argued that the Repayment Agreement is unenforceable. But this argument misconstrues Bay State's position. Bay State has argued only that the Repayment Agreement is not the source of Bay State's right to repayment, because Bay State received no consideration for entering into the Repayment Agreement. Terranova Bakers, however, indisputably received consideration for entering into the Repayment Agreement, in the form of an extension of time to repay its then approximately $350,000 debt to Bay State. Therefore, if the Repayment Agreement is to be held unenforceable as against Terranova Bakers, it must be for one of the other reasons that Terranova Bakers has argued (which are discussed below), not because Bay State has argued that the Repayment Agreement is not the source of its right to repayment.

■ Terranova Bakers next argues that Bay State is not entitled to summary judgment pursuant to the Repayment Agreement because the Repayment Agreement is a contract of adhesion or is unconscionable. This argument is without merit. The Repayment Agreement is only one page long and contains no fine print. The parties entered into it after meaningful negotiations.[5] And Terranova Bakers has failed to adduce any evidence that the terms of the Repayment Agreement are in any way unfair to Terranova Bakers. As a result, there is no basis for concluding that the Repayment Agreement is a contract of adhesion, *see* Farnsworth, § 4.26, 310–319 & nn. 17, 18 (citing Restatement (Second) of Contracts § 211 (1981); *Hunter v. Texas Instruments,* 798 F.2d 299 (8th Cir.1986)) (citations omitted), or is unconscionable, *see* Farnsworth, § 4.28, 323–339 & nn. 14–15, 45–50 (discussing applica-

---

**3.** Neither party has briefed the issue of what state's law should control the viability of the various claims, defenses, and counterclaims asserted in this diversity action. The Court's analysis relies on generally accepted principles of contract or tort law to the limited extent that it is necessary to do so in order to decide the present motion.

**4.** Bay State had been paying Terranova Bakers *substantially more* for these services before the parties entered into the Repayment Agreement. *See* Affidavit of Ciro Terranova, at ¶ 12 ("Of concern to [Terranova Bakers in entering into the Repayment Agreement] was the rate to be paid for ... bulk transfer work.... Although [Terranova Bakers] had previously received as much as $.85 per cwt. from [Bay State, Bay

State] wanted to reduce the rate to 70 [cents] or less."); Deposition of *Debbie McNulty,* at 12, 52–55 ("[Terranova Bakers] couldn't accept a $.70 rate going down from the $.85 [Bay State was] currently paying them...."); *see also* Deposition of Roger Hipwell, at 12–13, 26 ("[A]t that time, [Terranova Bakers was] getting the $.85 rate.... [W]e [Bay State] wanted to ... reduce the rate to $.70....").

**5.** The Repayment Agreement includes of some of Terranova Bakers' bargaining positions as well as some of Bay State's. For example, Bay State agreed to Terranova Bakers' demand that Bay State promise to retain Terranova Bakers' services as a bulk transfer agent so long as Terranova Bakers was not in default on its payment obligations.

tion of U.C.C. § 2–302, on which Terranova Bakers relies). Terranova Bakers further argues that Bay State placed Terranova Bakers under duress when negotiating the Repayment Agreement by ceasing sales of its goods to Terranova Bakers until Terranova Bakers entered into the Repayment Agreement. This argument is also without merit. Bay State was under no contractual obligation to continue selling goods to Terranova Bakers, *compare* Farnsworth § 4.17, at 277 & n. 15 (citation omitted), and given that Terranova Bakers was already some $350,000 behind in its payments to Bay State, Bay State's refusal to sell more goods to Terranova Bakers before Terranova Bakers entered into a written repayment agreement hardly constitutes "duress." *See* E. Allan Farnsworth, § 4.17 at 274–279 & nn. 19, 21 (citing *Hellenic Lines v. Louis Dreyfus Corp.*, 372 F.2d 753 (2d Cir.1967); Restatement (Second) of Contracts § 318, cmt. a (1981); *First Data Resources v. Omaha Steaks Intl.*, 209 Neb. 327, 307 N.W.2d 790 (1981)) (citation omitted).

■ Terranova Bakers further argues that Bay State is not entitled to summary judgment pursuant to the Repayment Agreement because Bay State fraudulently induced Terranova Bakers to enter into the Repayment Agreement. As Bay State contends, however, Terranova Bakers has failed to plead fraud with particularity as required by Fed. R.Civ.P. 9(b). Pursuant to Rule 9(b), an allegation of fraud "should state the contents of the communications, who was involved, where and when they took place, and why they were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175–76 (2d Cir. 1993). Terranova Bakers' answer does not even begin to meet these requirements; in particular, it does not state who made the alleged misrepresentations to whom, nor does it state when or where any of the alleged misrepresentations was made. In addition, although Bay State clearly set forth its Rule 9(b) argument in its moving papers, *see* Bay State's Memorandum of Law at 7, Terranova Bakers did not, in its opposition papers, seek leave to amend its answer. More importantly for summary judgment purposes, however, Terranova Bakers' evidentiary opposition to Bay State's summary judgment motion also consists of only "vague, hedged allegation[s] of fraud," *Gold v. Field*, 1993 WL 212672, *6 (S.D.N.Y. June 14, 1993), that, if incorporated into an amended answer, would fail to comply with Rule 9(b)'s strictures.[6] Against this backdrop, the Court strikes Terranova Bakers' fraudulent inducement affirmative defense and dismisses its fraudulent inducement counterclaim, with prejudice. *See Shields v. Citytrust Bancorp, Inc.* 25 F.3d 1124, 1132 (2d Cir.1994) (Jacobs, Winter, and Newman, J.J.) (affirming dismissal with prejudice: "Although federal courts are inclined to grant leave to amend following a dismissal order, we do not deem it an abuse of the district court's discretion to order a case closed when leave to amend has not been sought.... [In any event] [i]t is not clear that the failure of pleading could be remedied by further amendment, nor has [plaintiff] suggested how that could be

**6.** Cured to the extent possible of generality and equivocation, the substance of Terranova Bakers' fraud allegation appears to be that Bay State (mis)represented to Terranova Bakers that Bay State would provide Terranova Bakers with bulk transfer work primarily from a mill in Clifton, New Jersey (the "Clifton mill"), rather than from rail yards in Jersey City, New Jersey (the "rail yards"). *See* Affidavit of Ciro Terranova, at ¶ 15. But Ciro Terranova ("Terranova") never alleges in his affidavit that any named agent of Bay State made this representation to him or any other named agent of Terranova Bakers. *Compare Mills*, 12 F.3d at 1175 ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to "defendants.") (citations omitted). The farthest Terranova goes toward making a specific allegation that has any relationship to Terranova Bakers' fraud allegations is his statement: "During conversations held between Plaintiff's representatives, including Debbie McNulty, Credit Manager, and Roger Hipwell, Vice President for Sales, and me in October and November, 1991, *Defendant was led to understand* that *significant* bulk transfer work from the Clifton mill would be forthcoming." Affidavit of Ciro Terranova at ¶ 11. But Terranova does not set forth in even the slightest detail what actions or inactions on the part of McNulty or Hipwell "led Defendant to understand" that significant bulk transfer work from the Clifton mill would be forthcoming. Nor does Terranova set forth any evidence that *"significant* bulk transfer work from the Clifton mill" was not, in fact, forthcoming during the course of performance of the Repayment Agreement. Under Rule 9(b), more was required.

done.") (citing *Carl Sandburg Village Condominium Development Co.,* 758 F.2d 203, 206 n. 1 (7th Cir.1985)) (citation omitted).

■ Finally, Terranova Bakers argues that Bay State is not entitled to summary judgment pursuant to the Repayment Agreement because Bay State breached the Repayment Agreement by terminating Terranova Bakers' services as a bulk transfer agent when Terranova Bakers was not in default on its payment obligations under the Repayment Agreement. But this argument, like Terranova Bakers' fraudulent inducement argument, suffers from a critical evidentiary deficit. Nowhere in his affidavit in opposition to Bay State's summary judgment motion does Terranova Bakers' President, Ciro Terranova, ever state that Bay State terminated Terranova Bakers' services as a bulk transfer agent *before* Terranova Bakers stopped making the weekly payments that were required of it under the Repayment Agreement. Nor does Terranova set forth specific facts from which this point could reasonably be inferred. Although Terranova specifically implies that Terranova Bakers made its last payment to Bay State on October 2, 1992, *see* Affidavit of Ciro Terranova, at ¶ 16 ("Defendant had reduced the open account debt by $95,559.00 between November 12, 1991 and October 2, 1992"), he avoids specificity when describing the timing of the termination, *see id.* at ¶ 17 ("Ultimately, *in October, 1992,* using the pretext of a minor dispute [the circumstances of which Terranova never specifies], Plaintiff terminated Defendant's services as a bulk transfer agent.") (emphasis added). In the face of Bay State's evidence that it terminated Terranova Bakers' services as a bulk transfer agent after, and because, Terranova Bakers defaulted on its payment obligations, *see, e.g.,* Affidavit of Debbie McNulty, sworn to June 29, 1993, at ¶¶ 5–7, and Exhibits D and E, Terranova's affidavit is insufficiently specific to create a genuine issue of material fact for trial. *See*

Fed.R.Civ.P. 56(e) (to defeat summary judgment motion, nonmoving party must "by affidavits or ... otherwise ... set forth *specific* facts showing that there is a genuine issue for trial.") (emphasis added). The Court therefore dismisses Terranova Bakers' counterclaim for breach of the Repayment Agreement.

Having concluded that Terranova Bakers' opposition to summary judgment pursuant to the Repayment Agreement is wholly inadequate, the Court enters summary judgment against Terranova Bakers on those payments that Terranova Bakers has been required to make to date pursuant to the Repayment Agreement.[7]

## CONCLUSION

Bay State's motion for summary judgment against Terranova Bakers is HEREBY GRANTED as to those payments due to date pursuant to the Repayment Agreement, and HEREBY DENIED as to any further amounts that Terranova Bakers may owe pursuant to the Repayment Agreement or pursuant to Terranova Bakers' acceptance of goods from Bay State. The parties to this action are HEREBY ORDERED to appear before this Court on February 17, 1995, at 11:30 AM, for a pre-trial conference in Courtroom 1106, United States Courthouse, 40 Centre Street, New York, New York.

**SO ORDERED.**

---

7. Terranova Bakers has argued that Bay State is entitled to, at most, those payments that are due to date pursuant to the Repayment Agreement, because the Repayment Agreement contains no acceleration clause. Bay State's only response to this point was to argue that Bay State's right to repayment arises not out of the Repayment Agreement but out of Terranova Bakers' acceptance of the goods. Because the Court has rejected the latter argument for summary judgment purposes, the Court enters summary judgment for Bay State on only those payments that have become due to date pursuant to the Repayment Agreement.