FIRST DATA RESOURCES, INC., A DELAWARE CORPORATION, APPELLEE, V. OMAHA STEAKS INTERNATIONAL, INC., A NEBRASKA CORPORATION, APPELLANT.

307 N.W.2d 790

Filed July 2, 1981.   No. 43347.

Warren S. Zwieback and Thomas F. Flaherty of Zwieback, Brady & Kasher, P.C., for appellant.

Frank F. Pospishil and Harvey B. Cooper of Abrahams, Kaslow & Cassman for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

HASTINGS, J.

The plaintiff, First Data Resources, Inc. (FDR), is a computer data processing organization which furnished computer services to Omaha Steaks International, Inc. (OSI), an organization which sold and shipped gourmet meats to various customers. FDR brought this action in the District Court for Douglas County to recover for its services claimed to have been rendered under the terms of a written contract as amended. OSI in its answer claimed the invalidity of the contract amendment by

reason of economic duress. It also alleged the failure of the plaintiff to perform required services and deliver necessary materials in a careful, diligent, and workmanlike manner, and counterclaimed for damages claimed to have resulted from such breach of contract. At the close of the plaintiff's case, and before the defendant had offered any evidence, FDR demurred ore tenus and moved to direct a verdict in its favor. After OSI, with leave of the court, dismissed its counterclaim, the trial court sustained both the demurrer and the motion and entered judgment in favor of FDR for $82,913.75, including $7,146.21 in prejudgment interest. This action OSI assigns as error on appeal. We reverse and remand.

On December 19, 1975, the parties entered into a written agreement whereby FDR agreed to furnish certain services and materials to OSI for which the latter was to pay the sum of $1.24 per "receiver" entered into the OSI processing system. Also, OSI was to pay certain charges for what the contract referred to as "Additional Services." The term of the agreement was for a period of 1 year from and after February 1, 1976, "after which period this Agreement shall remain in effect until terminated by either First Data or OSI upon ninety days prior written notice." On April 18, 1977, FDR wrote a letter to OSI advising that the pricing of FDR's services was unsatisfactory "and in accordance with the terms of our existing data processing Agreement, please consider this our notice to terminate our Agreement effective July 31, 1977." The letter went on to state that FDR wanted to continue offering services to OSI, but only if it could make a reasonable profit on such transactions. Therefore, FDR stated, if the business relationship was to stay in existence, a new agreement would have to be executed which would be effective August 1, 1977. FDR sent an additional letter dated April 28, 1977, in which a new rate of $1.92 per receiver was suggested.

By letter dated May 19, 1977, from OSI to FDR, OSI

stated that it accepted the offer of $1.92 "under extreme economic duress." The letter went on to say: "First Data Resources management knows very well that Omaha Steaks International cannot arrange for replacement of this service under such short notice. . . . Therefore, we reluctantly accept your offer of 18 May 1977 according to the terms of your letter of 18 May [sic] 1977." A "First Amendment to Agreement for Data Processing Services," containing the new terms, was executed by the parties on June 8, 1977, to be effective August 1, 1977. At OSI's request, this agreement was terminated and OSI ceased giving FDR any of its regular data processing business in January of 1978, although there were some winddown services that continued for several months.

In its amended petition FDR alleged the execution of the two agreements previously mentioned and claimed performance on its part in accordance with the amended agreement, a request for payment of services rendered to OSI until the date of termination, and a refusal on the part of OSI to make payment in accordance with the invoices submitted. By its second amended answer and counterclaim, OSI admitted the execution of the agreements. However, it claimed that it executed the "First Amendment to Agreement . . . for the sole reason that Plaintiff would not live up to its obligation under the agreement dated December 19, 1975, in that Plaintiff knew by reason of the Plaintiff's intimate association with the Defendant that the Defendant could not replace the Plaintiff's services within the time during which the Plaintiff threatened to cease rendering such services and the Plaintiff further knew that without Plaintiff's services, Defendant could not conduct its business, but Plaintiff nevertheless threatened to terminate its services and thereby forced Defendant to execute the . . . Agreement . . . such that the . . . Agreement is not binding on Defendant." OSI further alleged that such actions on the part of FDR in obtaining the execution of such agreement constituted the use of eco-

nomic duress by FDR. OSI then claimed that FDR failed to perform its part of the agreement in a workmanlike manner in that it negligently and carelessly caused erroneous worksheets and shipping instructions and duplicate shipping labels to be issued to OSI, resulting in duplicate orders being filled by OSI at a cost to OSI of $28,000 and loss of OSI employees' time of $4,500. Finally, OSI incorporated all of the allegations of its answer into what it called a counterclaim and requested damages in the amount of $32,500.

In sustaining the demurrer ore tenus and the motion for a directed verdict, the trial court reasoned that once the defendant dismissed its counterclaim based upon FDR's alleged negligent performance of the terms of the agreement, OSI had abandoned that defense, leaving only the defense of economic coercion. In examining the defendant's amended answer the court decided as a matter of law that the factual allegations, including admissions of fact contained therein, did not fit our requirements to plead a case of economic duress or coercion. Therefore, because the plaintiff had made out a prima facie case and the defendant was left without any affirmative defense, the trial court reasoned that FDR was entitled to judgment as a matter of law.

Perhaps the leading and most definitive case on the subject of business compulsion or economic duress is *Carpenter Paper Co. v. Kearney Hub Pub. Co.*, 163 Neb. 145, 78 N.W.2d 80 (1956). This was a case in which the facts were strikingly similar to those of the instant case. The parties had entered into a contract in 1942 whereby the plaintiff was to furnish newsprint at a certain price. The contract was for 1 year, renewable from year to year unless canceled in writing by either party. In November of 1947 an agreement was entered into by the parties raising the price per ton for newsprint delivered. The suit spawning the appeal was for newsprint sold and delivered in March of 1954. The defendant insisted that it should only be charged on the 1942 contract basis, claiming that it had gone along with the 1947

change "only because he had no other choice since he had to have newsprint." *Id.* at 150, 78 N.W.2d at 83.

This court declared that the appellant was not under legal obligation to continue supplying newsprint at the price provided for in the original contract. We then stated: "'While executory and before a breach, the terms of a written contract may be changed by a subsequent parol agreement; and such subsequent agreement requires no new consideration.'" *Carpenter Paper Co.* at 150, 78 N.W.2d at 83. We then cited with approval *Newland v. Child,* 73 Idaho 530, 254 P.2d 1066 (1953), and declared that in order for an agreement to be voidable by reason of economic duress, it must not only have been obtained by means of pressure brought to bear, but the resulting agreement must be unjust, unconscionable, or illegal. We concluded by saying: "It [the plaintiff] only sought to handle it on a more profitable basis. This it had a perfect right to do if, in doing so, it did not make unjust demands upon appellee in view of all the circumstances then existing." *Carpenter Paper Co.* at 152, 78 N.W.2d at 84.

OSI seeks to avoid the rather obvious application of *Carpenter Paper Co.* to the facts of its own case by citing *McCubbin v. Buss,* 180 Neb. 624, 144 N.W.2d 175 (1966). There we stated: "If a person threatens to do what he has a legal right to do, his threat ordinarily does not constitute business coercion. This rule has been stated in a form which arguably implies that no threat is wrongful unless there would be an independent liability for the threatened act. [Citing *Carpenter* and others.] If the implication was made, the rule was overstated. An unjust and inequitable threat is wrongful, although the threatened act would not be a violation of duty in the sense of an independent actionable wrong in the law of crimes, torts, or contracts." *Id.* at 628, 144 N.W.2d at 178. Two comments would seem to deny OSI's reliance upon *McCubbin.* The threat involved was to fire the plaintiff if he did not sign an agreement rescinding a stock-purchase contract which he possessed. As this court

pointed out, the plaintiff yielded his rights in order to preserve his means of livelihood, the defendant bargained from strength, and the consideration for the discharge of the stock-purchase contract was inadequate. Secondly, *McCubbin* did not overrule *Carpenter* in suggesting that to be wrongful a threat need not constitute the basis for an independent actionable wrong. It did not disturb the ruling of *Carpenter* that the agreement, supposedly the result of pressure, must be either illegal, *unjust*, or *unconscionable*.

FDR was perfectly within its rights in electing to terminate the agreement according to its terms rather than continue to do business on what it considered to be a losing basis. OSI in no way alleges in its answer that the amended agreement produced a contract the terms of which were either illegal, unjust, or unconscionable. Having failed to allege an essential element of the defense of economic duress or business coercion, the answer was subject to demurrer, and the trial court was correct in sustaining the demurrer ore tenus.

The next question to be decided is whether or not the trial court was correct in directing a verdict in favor of FDR, thereby depriving OSI of any opportunity to present evidence in support of its alleged defense. FDR insists that such action was correct because the defendant's pleaded defense of economic coercion was dismissed by the court and the counterclaim was dismissed by OSI. Therefore, according to FDR, the defendant's answer contained only a general denial which was insufficient to allow the production of evidence in behalf of OSI in the face of the judicial admissions made by its counsel. However, an examination of the record reveals something substantially less than an unequivocal admission on the part of OSI that FDR had fully performed its obligations.

After moving for a directed verdict in favor of OSI because there "has been no proof which would permit the jury to find in favor of the Plaintiff," the defendant's lawyer was asked by the court: "Is it . . . conceded . . . al-

though you haven't put on any evidence on the point, that the . . . remainder of the charges on the invoices showing the total as this last witness has testified to have, in fact, been shown by evidence." Counsel replied that "[t]he charges have been shown." The court then continued: "What then exactly is your point then with respect to the remainder. I want to make sure I understood that." Mr. Zwieback replied: *"That it has not been shown that the services were rendered* or that the charges were fair and reasonable, Judge. The charges are on the invoices." (Emphasis supplied.) The court then asked: "I understand that the charges are in reference — relate to the agreement, the validity of which you contest. However, it is your point, just so I get this clear in my mind, the services which those charges represent have in fact been rendered." Mr. Zwieback replied: *"That is one of the points.* We are not talking about the twenty-four hundred" (emphasis supplied), to which the court replied: "No, that is separate," and counsel responded, "Okay, that is correct." As a matter of fact, it seems rather clear to us that defendant's counsel did deny that the services required by the contract were performed, both on the record and in the answer. Plaintiff cites *Midland-Ross Corp. v. Swartz,* 185 Neb. 484, 176 N.W.2d 735 (1970), for the proposition that following the establishment of a prima facie case by the plaintiff, the court should not permit the defendant to introduce evidence where the answer does not state a defense, but rather should direct a verdict for the plaintiff. It should not require the citation of authority to establish the converse of that rule, i.e., that if the answer does plead a defense it would be error to prohibit the defendant from offering evidence in support thereof. Nonperformance can be proved under a general denial. For that reason, the defendant should have been given the opportunity to present its evidence tending to establish nonperformance on the part of the plaintiff. For that reason, the judgment of the District Court is reversed and the cause is remanded for further proceedings consistent with

this opinion.

Because there is still a possibility of a judgment in favor of the plaintiff upon a retrial of this case, we should mention the error claimed by the defendant because of the awarding of prejudgment interest. This is clearly answered by *Abbott v. Abbott*, 188 Neb. 61, 195 N.W.2d 204 (1972). "Where the amount of a claim is liquidated, compensation in the form of prejudgment interest is allowed as a matter of right. 'A claim is liquidated if the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance upon opinion or discretion.'" *Id.* at 67, 195 N.W.2d at 209. The trial court applied the correct rule.

REVERSED AND REMANDED WITH DIRECTIONS.