Nos. 95-4183MN, 96-1010MN

Michael J. Rudolph and     *
James A. Lindquist,     *
    *
    Appellants/Cross-Appellees, *
    * On Appeal from the United
    v.     * States District Court
    * for the District of
    * Minnesota.
Metropolitan Airports     *
Commission,     *
    *
    Appellee/Cross-Appellant.     *

Submitted: October 21, 1996

Filed: December 24, 1996

Before RICHARD S. ARNOLD, Chief Judge, McMILLIAN and BEAM, Circuit
    Judges.

RICHARD S. ARNOLD, Chief Judge.

Plaintiffs filed this action under the Fair Labor Standards
Act (FLSA), 29 U.S.C. §§ 201-19 (1994), to recover back wages for
time spent providing home care of dogs in the Metropolitan Airports
Commission's (MAC) canine unit. A jury found that both plaintiffs
had worked compensable time caring for the dogs (although not the
full amount alleged) for which MAC had not paid them. The District
Court then calculated the back wages owed to plaintiffs and awarded
attorneys' fees and costs. We reverse the Court's award of back
wages, as well as the award of attorneys' fees, because the

plaintiffs had been paid fully under the terms of a reasonable agreement they had with MAC regarding the hours they would work in caring for the dogs.  We hold that such an agreement is authorized by a regulation issued by the Secretary of Labor.

I.

The Airport Police Department, a division of the Metropolitan Airports Commission (which oversees public airports in the Minneapolis-St. Paul area), created a canine unit in 1989 to aid in the detection of drugs.  Michael Rudolph and James Lindquist, as well as six other officers with the Airport Police, asked to be considered for two canine-handler positions, which would require taking the dogs home at night to feed, groom, exercise, and otherwise care for them.  Rudolph and Lindquist were selected for the positions.

Shortly after Rudolph and Lindquist began caring for the dogs, MAC realized that it had an obligation under FLSA to compensate the officers for the time they spent at home doing this work.  MAC and the officers met and formed an interim agreement, in June 1990, that the officers would perform, and be compensated for, one-half hour of dog care on their on-duty days, and one hour (at an overtime-pay rate) on their off-duty days.  The agreement (like all the ones that followed) directed that the officers were not to perform additional care unless they had received prior approval from a supervisor.

In September 1990, the officers wrote a memorandum to MAC requesting that the agreement struck in June be signed and attached to the Metropolitan Airports Police Federation (the union) contract.  At about the same time, MAC was concluding a survey of local police departments' compensation policies with respect to canine handlers.  The report compiled from this survey indicated that providing one-half hour of care time on off-duty days would

-2-

not be inconsistent with other local police departments' policies. Consequently, MAC decided it wanted to reduce the off-duty-day time to one-half hour, and it so informed Rudolph and Lindquist, providing them with a copy of the survey report. Rudolph and Lindquist wrote to express their disagreement with this change, stating that they spent more than one-half hour on off-duty days caring for the dogs, and explaining that they needed this additional time.

In early October, Rudolph and Lindquist met with MAC to discuss their objections to the reduction in off-duty-day time, at which point they were asked to document the time they spent with the dogs. Lindquist apparently did not submit any documentation in the coming month, as requested, and Rudolph's documentation indicated that he spent 21 minutes per on-duty day and 54 minutes per off-duty day in dog care (including unrequested exercise and grooming). From this, MAC concluded that one-half hour would be reasonable for all days, and decided to institute this policy in November, 1990.

MAC continued to pay the officers for one hour of time on off-duty days, because Lindquist and Rudolph were not satisfied and had decided to refer the issue to the collective bargaining that would take place in 1991 to renegotiate the union's soon-to-expire contract with MAC. Both Rudolph and Lindquist were members of the union, and Lindquist was a principal negotiator for it. In June 1991, the union and MAC met with a mediator to attempt to resolve a number of contract issues, including the compensation that would be paid to canine handlers. MAC's labor-relations manager submitted to the mediator a proposed resolution of the disputed issues for the mediator to suggest to both parties. Included in the proposal was a provision that would compensate canine handlers one-half hour for dog care on all days and provide them with a take-home vehicle. The union decided not to accept the mediator's proposal, which it could reject or accept only in full.

As a consequence of the union's rejection of the proposal, the mediator asked both parties to submit their final positions on each of the 44 issues for which they were at an impasse in preparation for arbitration. The final position taken by the union regarding canine care included a request for one-half hour of compensation for work for both on- and off-duty days, $60.73 bi-weekly specialist pay, and the use of a vehicle for the officers to transport the dogs to and from their homes.

The dispute then went to interest arbitration. Before arbitration commenced, Lindquist, writing as Vice President of the union (and, after consulting him, on Rudolph's behalf), proposed resolution of the canine compensation issue by offering to accept the mediator's proposal (a vehicle and one-half hour per day) on this issue. Appellee's App. 32. MAC responded with an acceptance of Lindquist's proposal, specifically noting the terms - including the absence of the specialty pay provision - and attaching a copy of its proposed policy to its letter. Id. at 66. Lindquist confirmed his agreement, noting that the MAC's policy had "essentially the same" terms as those stated in the union's final position - the absence of specialist pay being the only difference - and asking that the policy be implemented as soon as possible. Id. at 65. MAC acknowledged receipt of this letter, writing Lindquist and the union that it considered it a "final and complete settlement" of this disputed issue, and indicated that it would implement the new policy "as soon as is feasible." Id. at 27. MAC then began to pay Rudolph and Lindquist for one-half hour of work for both on- and off-duty days. The arbitration of the remaining issues commenced shortly thereafter. The union negotiators never raised the canine care issue, nor did MAC's negotiators, who considered the issue to be settled. Tr. 778. As a consequence, the policy did not appear in the contract signed by MAC and the union in early 1992.

Plaintiffs filed this action in July, 1994, pursuant to 29

U.S.C. § 216(b) (1994), to recover back pay and the liquidated damages that may be awarded for violations of FLSA, and to obtain a declaratory judgment that MAC willfully violated FLSA. At the close of the evidence, the District Court asked the jury to decide whether Rudolph and Lindquist had, both for on-duty and off-duty days: (1) performed compensable work in excess of one-half hour; and (2) come to a reasonable agreement with MAC about the amount of work they were to perform. The Court also asked the jury to find how much in excess of one-half hour (if at all) the plaintiffs had worked on on- and off-duty days and whether MAC's failure to pay overtime was a willful violation of FLSA.

The jury found that plaintiffs had worked more than one-half hour of compensable work on both on- and off-duty days. It concluded, however, that MAC and plaintiffs had come to a reasonable agreement as to the amount of time the plaintiffs should spend caring for the dogs on on-duty days and therefore (as instructed) it did not find how much additional time plaintiffs had worked on such days. The jury determined that plaintiffs and MAC had not reached a reasonable agreement about off-duty days, and that Rudolph and Lindquist had performed an additional half-hour of compensable work (not including the half-hour for which they already had been compensated) on their off-duty days for which they had not been paid. The jury also found that MAC had not willfully violated FLSA.

Based on these findings, the District Court calculated the amount of back pay owed to plaintiffs. It calculated the total amount of back pay owed for the three-year period (from the date MAC reduced plaintiffs' off-duty-day pay to the date of judgment), and then deducted from that amount the total of all premium overtime-pay and compensatory time off MAC had given to plaintiffs. The result was an award to Rudolph of $1592.16 (doubled, pursuant to 29 U.S.C. § 216(b)'s provision for liquidated damages, from $796.08), and nothing to Lindquist, because his overtime credits

exceeded the amount MAC owed him in back pay. The court also awarded $31,644.31 to Rudolph and Lindquist for attorneys' fees and costs, a reduction from their request of over $257,000.

Rudolph and Lindquist appeal the District Court's method of calculating damages, its submission to the jury of the question whether the parties had made a reasonable agreement, and its reduction of attorneys' fees from the requested amount. MAC cross-appeals on several grounds. First, it argues that it was entitled to judgment as a matter of law because no reasonable jury could find either that the plaintiffs worked beyond the requested half-hour or that the parties had not come to a reasonable agreement regarding off-duty days. MAC also argues that the District Court erred in finding that the violations were not in good faith, in failing to calculate damages under FLSA's provision for public-safety employees, and in awarding over $30,000 in attorneys' fees and costs for a recovery of less than $2,000.

II.

The FLSA and its accompanying regulations lay out exacting standards concerning the maximum number of hours covered employees may work per week without their employer's incurring an obligation to pay overtime at a premium wage rate. Ordinarily, all time that an employer "suffers or permits" its employees to work must be compensated, any contract to the contrary notwithstanding. Employers and employees may not, in general, make agreements to pay and receive less pay than the statute provides for. Such agreements are against public policy and unenforceable. See Barrentine v. Arkansas-Best Freight Sys., 450 U.S. 728 (1981). The regulations, however, do provide certain exceptions. Critical to the case at hand is 29 C.F.R. § 785.23, which allows the use of a "reasonable agreement" to determine the number of compensable hours due an employee who works at home or who lives on the employer's premises. The regulation reads as follows:

-6-

§ 785.23 Employees residing on employer's premises or working at home.

An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises. Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own. It is, of course, difficult to determine the exact hours worked under these circumstances and any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted. This rule would apply, for example, to the pumper of a stripper well who resides on the premises of his employer and also to a telephone operator who has the switchboard in her own home.

Plaintiffs argue that § 785.23 does not apply to this dispute because the dog care they provided was only a small part of their total work as officers. The regulation, they contend, applies only to employees who live and perform all of their work on their employer's premises or who work entirely at home. MAC advances a broader reading of the regulation, arguing that an employer can compensate its employees for work at home pursuant to any reasonable agreement that "takes into consideration all of the pertinent facts." Bouchard v. Regional Governing Bd., 939 F.2d 1323, 1331 (8th Cir. 1991) (internal quotations and citations omitted), cert. denied, 503 U.S. 1005 (1992).

We believe that § 785.23 goes beyond plaintiffs' narrow reading and applies to the situation at hand. The regulations explain that the provision is but a specific application of general FLSA principles to a frequently occurring problem, 29 C.F.R. § 785.10, and that the courts are ultimately responsible for interpretations of the Act, 29 C.F.R. § 785.2. The regulation's

caption, which we may properly use to construe it, expressly mentions not only work performed by employees who live on the employer's premises, but also work performed in employees' homes. An example of this second category of work covered by the regulation is the telephone dispatcher in Halferty v. Pulse Drug Co., 864 F.2d 1185 (5th Cir. 1989), who did perform all of her work at home. But the fact that the regulation covers such a case does not mean that it does not cover employees only part of whose work is performed at home. Nothing in the words of the regulation contains such a limitation.

The reason for there being such a regulation in the first place also covers this case. The employer cannot easily determine how long the officers work at home caring for the dogs. Dog care - feeding, grooming, cleaning cages or pens, and exercising - may take more time on one day than on others. It may be spread out, sporadic in nature. An officer might feed a dog when they first get home, give the dog water later, and perform other care still later. The indeterminate nature of these tasks, we think, makes them exactly the sort of work as to which it makes sense for the parties to come to an agreement, to eliminate complicated, repetitious, and hard-to-resolve disputes about exactly how much time it took to take care of the dogs each day. So long as there was an agreement in fact, and the agreement was reasonable, we think § 785.23 applies to this case. It was proper for the District Court to put to the jury the question whether the parties had made a reasonable agreement.

We have carefully considered the authorities cited by plaintiffs in support of their contention that § 785.23 does not apply to this case. Two cases are cited from our own Circuit, Hultgren v. County of Lancaster, 913 F.2d 498 (8th Cir. 1990), and Bouchard v. Regional Governing Bd., supra. Both of these cases concerned "sleep time" of employees all of whose work was done on the premises of the employer. Neither case addresses the precise

issue involved here:  whether the regulation applies to work performed at home if the employees in question also do some work at the employer's place of business.  Neither case, even in dictum, throws any light on this question.  <u>Bouchard</u> does discuss the provision of the regulation specifying that it applies to employees residing on an employer's premises only if the employee resides there "on a permanent basis or for extended periods of time." Plaintiffs argue that the work that they performed at home in the present case did not cover "extended periods of time" within the meaning of the regulation.  The argument is beside the point.  The phrase "extended periods of time" appears only in that portion of the regulation pertaining to employees residing on their employer's premises.  It has nothing to do with employees performing work at their own homes.

Plaintiffs also refer to a brief filed by the Department of Labor as <u>amicus curiae</u> in <u>Nelson v. Alabama Institute for Deaf and Blind</u>, 896 F. Supp. 1108 (N.D. Ala. 1995).  They imply that the position taken by the Department in this brief supports their position in the present case.  We have not been supplied with a copy of the brief, and there is nothing in the reported opinion in <u>Nelson</u> to support the position taken by plaintiffs here.  <u>Nelson</u>, like the cases from our own Court we have just discussed, was a "sleep time" case.  Among the questions presented was whether the employees resided on their employer's premises for extended periods of time, as required by the regulation.  The Court held that they did not, and mentions in a footnote, 896 F. Supp. at 1113 n.5, that its holding is consistent with the position taken by the Department of Labor in its <u>amicus</u> brief.  Again, we see nothing here that is relevant for present purposes.  This case is a home-work case, and the question is whether the regulation applies to employees who work part of the time, but not all of the time, at home.  For the reasons we have given, we believe that the regulation does so

apply.[1]

The jury found that the plaintiffs and MAC had come to a reasonable agreement as to how much time Rudolph and Lindquist had spent caring for the dogs on on-duty days. This verdict is supported by substantial evidence, and plaintiffs are not entitled to any recovery for on-duty days.

The jury, in contrast, found that the parties had not come to a reasonable agreement concerning off-duty days. The District Court subsequently denied MAC judgment as a matter of law on this issue. While we review de novo the District Court's denial of MAC's motion, we view the evidence presented at trial in the light most favorable to Rudolph and Lindquist, the prevailing parties. E.g., Larson ex rel. Larson v. Miller, 76 F.3d 1446, 1452 (8th Cir. 1996) (en banc). Thus, although we are loath to reverse a finding of a jury, we will do so when there is only a "scintilla of evidence" or no "proof beyond speculation to support the verdict." Ibid. (internal quotations and citation omitted).

As we have explained above, MAC, upon realizing its FLSA obligations, sent Rudolph and Lindquist a memorandum proposing an interim policy regarding compensation for dog care that would be in place until a final policy was agreed to. Rudolph and Lindquist accepted this proposal. When MAC concluded that one-half hour of

---

[1]We find some implied support for this conclusion in Reich v. New York City Transit Authority, 45 F.3d 646 (2d Cir. 1995). That case arose out of a dispute between the New York City Transit Authority and its Police Department's dog handlers. The plaintiffs requested compensation for time spent taking care of the dogs at their homes, and also for commuting time. The Department of Labor filed suit seeking compensation for both types of work. Certain claims were then settled. In accordance with the settlement, the parties' collective-bargaining agreement was amended to include a provision entitling the handlers to compensation for specified periods of time for taking care of the dogs at home. It is apparent from the context that the handlers performed work both at home and on the employer's premises. See 45 F.3d at 647 & n.1.

dog care on off-duty days was reasonable, and should be its policy, the parties parted ways, and decided to resolve the issue in the context of collective bargaining.

After mediation of the union-MAC contract failed, and the issues were set for interest arbitration, Lindquist sent a letter to MAC offering to accept the mediator's proposal on the issue involved in this case. The letter stated, in pertinent part, "You assure me this is the offer: Take-home vehicles and one-half hour compensation per day for care and maintenance of the dogs. After hearing of the offer for the first time, Mike and I would be willing to accept this policy." Appellee's App. 32. MAC responded that it was happy to settle the issue on the terms presented by the mediator - one-half hour of work on all days, a take-home vehicle, and no specialist compensation - attached the mediator's proposal, and asked for the union to provide a written statement acknowledging acceptance of these terms. Id. at 66-67. Lindquist answered MAC's acceptance letter with a letter of his own, the text of which follows:

> The Airport Police K-9 handlers and the Federation agree to accept the K-9 policy as presented in the mediator's proposal of June 10, 1991. As you have noted in your letter, the Federation['s final position on this issue] is essentially the same as your policy with the exception of some additional financial compensation.
>
> Your willingness to implement this policy immediately is appreciated and is the reason for its acceptance. The Federation has indicated a desire and willingness to settle the entire contract short of interest arbitration and each item agreed upon is a step to that end.

Id. at 65. MAC responded again, reconfirming the terms, and indicating that it would implement the policy as soon as possible. Id. at 27. The officers began soon to receive pay on these terms,

as well as the use of a vehicle.

Lindquist testified that he did not feel that he had come to an agreement with MAC,[2] because MAC was not offering the specialty pay that he thought the mediator's proposal contained.[3]  Tr. 458. When later asked whether he agreed to the policy put in place in 1991, however, he stated that he and Rudolph "were accepting that policy."  Tr. 818.  Even if we take Lindquist's testimony as a whole as a claim that he based his offer of settlement on the wrong document, the two letters he wrote (and the two he received) explicitly state that the canine handlers were to receive one-half hour of compensation per day, a take-home vehicle, and no specialist pay.  In his first letter, making the offer, Lindquist makes no mention of specialist pay.  In his second letter, Lindquist again refers to the mediator's proposal, and contrasts MAC's policy (which it had submitted to the mediator) with the union's final position, which demanded the specialist pay.  The documentary evidence, especially when it is as unambiguous as it is here, cannot be refuted by Lindquist's inconsistent testimony about his incorrect beliefs.  Therefore, no reasonable jury could accept Lindquist's statements instead of the documented proof of an agreement and its terms.  A party who has made an unambiguous written contract will not be heard to say that no agreement was made.

---

[2]Rudolph also answered "No" when asked whether he had "ever voluntarily entered into an agreement where you considered one-half hour a day to be adequate to provide for the care and maintenance of the animal."  Tr. 676-77.  This statement could be literally true:  that is, Rudolph may have entertained the personal belief that the agreement he had made was not adequate.  This does not mean there was no agreement.

[3]Lindquist appeared at trial to have believed the document captioned "Statement of Final Positions for Metropolitan Airports Police Federation," and submitted to the arbitrator after mediation failed, which included a request for specialist pay, to be the mediator's proposal.  See Tr. 446, 820.

Perhaps the jury thought there was an agreement, but that it was not reasonable. Rudolph and Lindquist contend that they actually worked more than provided for on off-duty days. But the agreement explicitly dictates the amount of time they were to spend on dog care, and specifies that they needed to obtain prior approval for any additional time they thought necessary.[4] Thus, the additional work the jury found plaintiffs to have performed was neither "suffered nor permitted" by MAC. 29 C.F.R. § 785.11; see also Donovan v. Williams Chem. Co., 682 F.2d 185, 188 (8th Cir. 1982) (holding husband-wife teams instructed to split 80-hour-weekly operation of gas stations could not collect overtime pay for having worked in excess of 40 hours each). Plaintiffs persist, however, with the contention that because MAC knew or had reason to know additional work was being performed for its benefit, it is liable for the attendant wages. See 29 C.F.R. § 785.11. We cannot imagine what more MAC could reasonably have done. It was entitled to rely on plaintiffs to follow the clear terms of the agreement. (Sending someone to monitor the plaintiffs' activities at home, in addition to being exceedingly intrusive, would simply waste additional MAC money.)

We do not know what amount of daily dog care is best. We believe, however, that MAC has plenary authority to make that determination about its own dogs, and direct its canine caretakers accordingly. It is not enough for plaintiffs to show that they worked more than agreed. They must show that the agreement provided an unreasonably short amount of time to perform the assigned tasks. Cf. Lyle v. Food Lion, Inc., 954 F.2d 984 (4th Cir. 1992). This they have failed to do. There is no evidence that a reasonable employer would necessarily have known that half an hour per off-duty day was too short a time to perform the tasks

---

[4]The plaintiffs could recall no time during the period in dispute that they sought such approval.

MAC told the officers to perform. Any time beyond the half-hour plaintiffs spent with their canine charges we presume stemmed from their personal devotion to the dogs, and was, therefore, not "predominantly for the benefit of the employer," Henson v. Pulaski County Sheriff Dep't, 6 F.3d 531, 534-35 (8th Cir. 1993), as it must be in order to constitute "work" within the statute's meaning, as explained in Tennessee Coal, Iron, & R.R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 598 (1944). We therefore hold that MAC was entitled to judgment as a matter of law that a reasonable agreement existed as to off-duty days, and that plaintiffs were therefore not entitled to any back pay.

## III.

MAC and plaintiffs made a reasonable agreement as to the amount of time Rudolph and Lindquist were to spend on dog care. The portion of the judgment that held that plaintiffs are entitled to no additional compensation for on-duty days is affirmed. The portion of the judgment that held that plaintiffs are entitled to additional compensation for off-duty days is reversed. The cause is remanded with directions to enter judgment for defendants. We need not address whether the District Court correctly calculated the back wages owed. Because the plaintiffs are obtaining no success on the merits of their claim, we vacate the District Court's award of attorneys' fees.

It is so ordered.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-14-