# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-2647

_____

Lane A. Gaby; Lisa J. Gaby;          *
                                     *
    Plaintiffs\Appellants,           *
                                     * Appeal from the United States
                                     * District Court for the
    v.                               * District of Nebraska.
                                     *
Omaha Home for Boys, a               *
non-profit corporation,              *
                                     *
    Defendant\Appellee.              *
                                     *
_____                          *
                                     *
James Wiley; Alvera L. Wiley;        *
                                     *
    Plaintiffs/Appellants,           *
                                     *
    v.                               *
                                     *
Omaha Home for Boys, a               *
non-profit corporation,              *
                                     *
    Defendant\Appellee.              *
                                     *
_____                          *
                                     *
Robert Cork; Kathy Cork;             *
                                     *
    Plaintiffs\Appellants,           *
                                     *
    v.                               *
                                     *
Omaha Home for Boys, a               *
non-profit corporation,              *
                                     *
    Defendant\Appellee.              *
                                     *
_____                          *

Joe D. Clapp; Gail A. Clapp;          *
                                      *
    Plaintiffs\Appellants,          *
                                      *
    v.                              *
                                      *
Omaha Home for Boys, a                *
non-profit corporation,               *
                                      *
    Defendant\Appellee.             *
                                      *
                                      *
                                      *
_____         *
                                      *
Boyd Eveland; Dianna Eveland;         *
                                      *
    Plaintiffs\Appellants,          *
                                      *
    v.                              *
                                      *
Omaha Home for Boys, a                *
non-profit corporation,               *
                                      *
    Defendant\Appellee.             *
                                      *
                                      *
_____         *
                                      *
Jerry L. Hall;Beverly J. Hall;        *
                                      *
    Plaintiffs\Appellants,          *
                                      *
    v.                              *
                                      *
Omaha Home for Boys, a                *
non-profit corporation,               *
                                      *
    Defendant\Appellee.             *

_____

Submitted: January 16, 1998

Filed: April 13, 1998
_____

Before RICHARD S. ARNOLD, Chief Judge, MORRIS SHEPPARD ARNOLD, Circuit Judge and SACHS,[1] District Judge.

_____

SACHS, District Judge.

Appellants, twelve individuals who were previously employed as "house parents" by the Omaha Home for Boys, appeal from an adverse decision of the United States District Court for the District of Nebraska.[2]  Appellants alleged a violation of the Fair Labor Standards Act ("the Act"), 29 U.S.C. § 201 et seq.  After a bench trial, the district court found in favor of the Omaha Home for Boys ("the Home").

**I.**

Lane A. Gaby, his wife, and five other couples were employed by the Home, a residential-type institution in which eight to twelve boys live in a unit with a set of house parents.  The arrangement is known as "The Family Home Program."  Sound patterns of behavior are taught and exemplified by the house parents who live with, monitor and provide guidance for the youths.

In early 1992, the Home presented eight of the appellants with an employment agreement.  The remaining four appellants were hired later in 1992 and were also presented with a similar form of employment agreement. The central theme of the contract was set forth in the following paragraph taken from page two of the agreement:

> For purposes of the Fair Labor Standards Act, particularly Section 785.23 [sic], issued January 11, 1961, and amended in October 1, 1970, the parties agree that the usual work week which takes place within six (6) consecutive days, is 60 hours which each of the House Parents

_____

[1]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri, sitting by designation.

[2]The Honorable Thomas M. Shanahan, United States District Judge for the District of Nebraska.

would work.  This takes into consideration the personal time available to the House Parents, sleep time and other time when the House Parents are not involved in working with the youth who are assigned to their residences.

The normal work week for house parents consisted of six days at work and three days off.  During the six days at work, the house parents lived and ate all of their meals with the boys in the unit.  The agreement provided for overtime payments for what was estimated to be the time when house parents worked over forty hours during the six-day work week.  In effect, the house parents thus received forty hours of regular pay and twenty hours of time and a half pay during a normal week.  Active work for ten hours each day was assumed to be required, on the average, for each of the two house parents.  The agreement also provided in paragraph 3 that "in the event it would be necessary to work substantially more than those hours in any particular work week because of an emergency or the unavailability of Alternative House Parents," overtime would again be paid.  Overtime pay was in fact allowed for each such day, again based on an assumed ten hours of work activity.

Each of the plaintiffs brought suit under 29 U.S.C. § 216(b) which authorizes private litigation for enforcement of the Act.  The cases were consolidated.  After a four day bench trial, the district judge found in favor of the Home.

## II.

The Fair Labor Standards Act establishes a maximum number of work hours that employees may work without receiving overtime pay, and "employers and employees may not, in general, make agreements to pay and receive less pay than the statute provides."  Rudolph v. Metropolitan Airports Comm'n, 103 F.3d 677, 680 (8th Cir. 1996) (citing Barrentine v. Arkansas-Best Freight Sys., 450 U.S. 728 (1981)).  An exception to this general rule is set forth in the following regulation:

-4-

An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises. Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own. It is, of course, difficult to determine the exact hours worked under these circumstances and any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted. This rule would apply, for example, to the pumper of a stripper well who resides on the premises of his employer and also to a telephone operator who has the switchboard in her own home.

29 C.F.R. § 785.23.

The findings of the district court are reviewed under a clear error standard. Estate of Davis by Ostenfeld v. Delo, 115 F.3d 1388, 1393 (8th Cir. 1997). "We will overturn a finding of fact only if it is not supported by substantial evidence in the record, if the finding is based on an erroneous view of the law, or if we are left with the definite and firm conviction that an error has been made." Id. (citing Sawheny v. Pioneer Hi-Bred Int'l, Inc., 93 F.3d 1401, 1407-8 (8th Cir. 1996)).

**III.**

Appellants raise several issues for our review. Primarily, appellants argue that the agreement form is unreasonable under the Fair Labor Standards Act in that considerably more than a ten-hour day was required for their work, and the agreements were coercively obtained. Next, appellants contend that the district court erred in its findings regarding overtime compensation for a seventh workday, and in its failure to apply the portion of the agreement allegedly requiring overtime pay for all overtime work.

A. Reasonableness under the Act

The appellants contend that the agreement is unreasonable under 29 C.F.R. § 785.23. This Court has recently addressed a comparable situation in Rudolph v. Metropolitan Airports Comm'n,

103 F.3d 677 (8th Cir. 1996).  In Rudolph, we were called upon to review an application of § 785.23 in the context of off-duty police officers caring for dogs from the department's canine unit.  Id. at 678-79.  As will be noted below, portions of the Rudolph analysis apply in this case, and favor the Home.

Section 785.23 envisions some jobs in which the exact numbers of hours worked are difficult to determine due to the employee residing on his employer's premises.  See 29 C.F.R. § 785.23; Rudolph, 103 F.3d at 681. The relationship between the house parents and the Home is exactly the type of employment dealt with in § 785.23.  The house parents lived at the facility for extended periods of time.  Testimony was presented to the trial court that, with two house parents, one person was often sufficient to respond to the occasional demand or problem.  This allowed the other parent to "engage in normal private pursuits."  29 C.F.R. § 785.23.  Thus it was possible to "cover" well over ten hours of activity a day. Moreover, and most significantly, demands for attention were intermittent, allowing private activities frequently and for extended periods during a 24-hour day.

The district court concluded that the contract was reasonable under § 785.23.  The judge heard substantial testimony that the estimated time to complete the work of house parent was sixty hours per six-day week.  He received evidence detailing the time requirements of various work activities and of the amount of "down time" or personal time available.[3] He was not required to accept testimony from every potential witness, especially when the majority of the witnesses had an interest in the outcome of the

---

[3]Plaintiffs tend to concentrate criticism of estimates on the time commitments necessary when the youths were not in school, particularly during the summer months.  Defendant presented testimony that the number of boys in the residence generally decreased during the summer, that outside staff availability increased, and that other factors, such as later sleeping habits, tended to counter the impact of closing schools.  In any event, the year-round average of ten hours of active daily work for each of the two house parents did not preclude a longer work day during certain days and months.

litigation.  United States v. Fairchild, 122 F.3d 605, 613 (8th Cir. 1997), cert. denied, ___ U.S. ___, 118 S.Ct. 1086 (1998).  We have reviewed the transcript and conclude that the testimony of the defense witnesses was knowledgeable, plausible, and in some respects more specific and arguably more realistic than the testimony presented by plaintiffs.

It is worth observing that this Court has previously considered the overtime claims of house parents in a different context, with mixed results.  In Hultgren v. County of Lancaster, Nebraska, 913 F.2d 498 (8th Cir. 1990), the Court affirmed a trial court ruling that "sleep time" could not be subtracted from compensable time of overnight relief workers at residential facilities for the mentally retarded.  In Hultgren there was proof of serious client behavioral problems that rarely allowed an uninterrupted night's sleep.  There were also certain deficiencies in sleeping accommodations.  In Bouchard v. Regional Governing Board, 939 F.2d 1323 (8th Cir. 1992), review of similar contentions resulted in appellate disallowance of all but one of the "sleep time" claims.  Appellants here acknowledge in their brief on appeal that they do not seek "payment for their sleep time, and specifically excluded sleep time from their testimony concerning the number of hours for which they are seeking overtime pay." In other words, we do not have a claim alleging a right to 24 hours of pay during each of the "on duty" days of service.  This concession is well advised, given the evidence here.  Compare, Beaston v. Scotland School for Veterans' Children, 693 F.Supp. 234 (M.D. Pa. 1988), aff'd, 869 F.2d 587 (3rd Cir. 1989), a case favoring the employer, cited without disapproval in Hultgren.

Appellants further claim that the agreements are voidable under an economic duress theory.  Under this theory of contract law, the house parents argue that they should be returned to the old salary system, which they found satisfactory.  Testimony was heard at trial that some of the employees not only disagreed with the time estimates in the agreement but expressed that disagreement

to administrators at the Home.  Appellants argue that the position of house parent left them in a particularly vulnerable position.  Many of the appellants did not maintain a residence outside of the Home.  Given the reality that the appellants had no other residence, they argue that the employment agreements were forced upon them and left them without any bargaining position.  The Home argues, however, that the appellants failed to establish the elements of economic duress.

Although federal law is in question, it is sufficient to examine Nebraska state law, as the parties do, for the standard concepts determining if a contract was entered into under economic duress.  For present purposes we assume that duress would be fatal to an employer's contention that its agreement with employees is a "reasonable agreement of the parties . . ." as required by the regulation in question.  The appellants cite two Nebraska cases.  In First Data Resources, Inc. v. Omaha Steaks Intern., Inc., 307 N.W.2d 790 (Neb. 1981), the Nebraska Supreme Court held that "in order for an agreement to be voidable by reason of economic duress, it must not only have been obtained by means of pressure brought to bear, but the resulting agreement must be unjust, unconscionable, or illegal."  307 N.W.2d at 793.  The Nebraska Supreme Court further held that "'[t]o constitute duress, there must be an application of such pressure or constraint as compels a man to go against his will, and takes away his free agency, destroying the power of refusing to comply with the unjust demands of another.'"  Haumont v. Security State Bank, 374 N.W.2d 2, 6 (Neb. 1985) (quoting Buhrman v. International Harvester Co., 150 N.W.2d 220, 223 (Neb. 1967)).  A central issue in economic duress cases is whether the party applying pressure is exercising a right that is legitimate (i.e. raising prices, First Data Resources, Inc., 307 N.W.2d at 792), or illegitimate (threatening criminal prosecution, Haumont, 374 N.W.2d at 6).  Nebraska law on this subject appears to be conventional.  Compare, Mirax Chemical Prods. Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 570 (8th Cir. 1991) (Wisconsin law).

In this case, the stated purpose of the agreement was to comply with the Fair Labor Standards Act. There was evidence that the Home was uncertain that the previous annual salary arrangement complied with the Act. In signing the new contract, appellants did not experience a decrease in compensation[4] and were not threatened with any illegal or illegitimate pressure. Several of the house parents signed the agreement on numerous occasions. The district court found that there was no economic duress. There was no error in that appraisal of the circumstances.

## B. Overtime Compensation

The second point raised by the appellants concerns the construction of the overtime provisions. The trial court heard evidence that house parents were paid overtime when they were required to work past the sixth day because of some emergency or unavailability of replacements. Although some extra days could have required more than ten hours of work, some seventh day activity may have required less. As previously stated, ten hours of active but intermittent work was a reasonable estimate, contractually agreed to by the parties.

Appellants claim that paragraph 3 of the agreement[5] should be construed to mean that the house parents should be compensated with overtime wages on every day they worked in excess of ten hours and should be compensated for a full ten-hour day even when they may have worked less than ten hours. This contention is inherently unreasonable, given the purpose of the regulation and the agree

---

[4]Our understanding is that one couple's initial joint salary of $24,000 (plus room and board) was increased under the new system to produce income exceeding $35,000 in 1993 and over $38,000 in 1994. Fringe benefits were calculated at over $7,000.

[5]Paragraph 3 provides in part that "both parties agree that in the event it would be necessary to work substantially more than those hours, . . . then in that event, when hours are worked over the base number, overtime shall be paid at the overtime rate agreed to heretofore." This language refers to extra days of work, as the full text of the sentence, excerpted earlier, clearly shows.

ment, as discussed in Rudolph, 103 F.3d at 681.  The regulation authorizes reasonable agreements that will help "eliminate complicated, repetitious, and hard-to-resolve disputes about exactly how much" work activity is required in a residential setting.

The contract was reasonably construed when the district court found that the clear purpose of the agreement was to make estimates of reasonable time commitments of the job.  Just because the Home proposed the language of the agreement, the district court was not required to construe the terms unreasonably to satisfy appellants' claims.

As stated in appellants' brief, the Home would compensate the house parents for a full ten hours "without any regard for the actual number of hours."  The trial court did not commit clear error by not ordering the Home to compensate the house parents on a time-clock or time-sheet basis when extra days were worked under the "emergency" or "unavailability" provisions.  Although the agreements referred to sixty hours of work in a six-day week, and did not expressly refer to ten-hour days, that was clearly contemplated by the agreements and understood by the parties. There was no evidence that the parties were in controversy over this point until they consulted counsel and filed suit.  The practical construction given to the agreement by the Home and acquiesced in by plaintiffs was both sensible and binding.

The Home applied the overtime provisions in a reasonable manner, and the district court did not err in concluding that the requisite overtime compensation had been paid.[6]

---

[6]Contrary to plaintiffs' contention, discussion between the district judge and counsel, as recorded in the transcript, shows that the claim for overtime during an extended work week was not overlooked.  The somewhat cryptic statements in the opinion regarding overtime compensation for extra days of work are adequate for present purposes.

**IV.**

The Omaha Home for Boys and the house parents made a reasonable agreement as to the amount of time normally required to perform the work of the house parents. Substantial evidence supports the trial judge's findings.[7] He was entitled to conclude that there was neither coercion nor misapplication of the employment contracts. The decision of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT

---

[7]We do not suggest, however, that this case serves to legitimize a standard ten-hour day theory for house-parent work. Different circumstances may dictate different results, particularly in cases where, unlike the present one, claimants prepare and present credible illustrative time sheets showing segments of work activity by each house parent on typical days. In the present case, although neither side tried to justify its position as lawyers routinely do in seeking fee allowances, the district court could conclude that the defense witnesses offered the most specific and convincing estimates.