**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3773
_____

FRANK KRAUSE; WILLIAM MARTIN,
Appellants,

v.

MANALAPAN TOWNSHIP

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 09-cv-2871)
District Judge:  Hon. Joel A. Pisano
_____

Submitted Under Third Circuit LAR 34.1(a)
June 28, 2012

Before:  SLOVITER, CHAGARES, and JORDAN, *Circuit Judges*.

(Opinion Filed:  June 29, 2012)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Frank Krause and William Martin appeal the judgment of the United States

District Court for the District of New Jersey dismissing their claim for overtime wages

under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.  Because we

agree that Manalapan Township (the "Township") has met its obligations under the FLSA, we will affirm the judgment of the District Court.

## I.      Background[1]

Krause and Martin were patrol officers with the Township Police Department. Krause served from 1994 until his retirement in 2009, and Martin served from 1988 through the filing of the present action. In 1997, Krause, whose childhood dream was to become a K9 officer, began discussing with Police Chief John McCormack the possibility of creating a K9 unit for the Township. Krause conducted research to support his proposal, contacting other agencies to understand the logistics, costs, and responsibilities associated with operating a K9 unit. He prepared a proposal that "outlined … everything [he] investigated as to" the formation of a K9 unit. (Joint App. at 200.) The Township agreed to form a K9 unit in 2000, and Krause and McCormack worked together in reviewing K9 policies from other police departments to create the Township's policy. Krause and Martin were assigned to the K9 unit at its inception and the Township gave each officer a dog.

The dogs lived with each officer in their homes and the officers were responsible for all aspects of the dogs' care. Those duties included grooming, walking, feeding, bathing, and ensuring that the dogs received proper veterinary care. The officers also

---

[1] Because we are reviewing the District Court's grant of summary judgment in favor of the Township, we recount the facts in the light most favorable to the non-movants, Krause and Martin. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995).

incurred additional cleaning duties for their police vehicles and homes because of the presence of the dogs.

While arranging logistics for the new K9 unit, Chief McCormack told Krause and Martin that they would "have to be compensated on the handling of the dog[s]" (Joint App. at 8), since the care of the animals would involve work outside of their normal shift hours. McCormack proposed that the officers receive four hours per week of "comp time" as payment for off-duty care of the dogs.[2] Krause and Martin accepted McCormack's proposal and an agreement was put into place. That agreement was later incorporated in a collective bargaining agreement negotiated by the Police Benevolent Association with the Township.

While they served as K9 officers, Krause and Martin never requested additional compensation for the time that they spent caring for the dogs and did not complain that one hour of comp time per shift was insufficient to compensate them. In early 2009, however, after they had ceased being K9 officers, Krause and Martin brought the present action under the FLSA, arguing that four hours of paid time off was not enough remuneration for the time that they had spent caring for the dogs while off duty. The Township and plaintiffs filed cross motions for summary judgment, and the Township won. Krause and Martin filed a timely appeal, challenging the District Court's grant of summary judgment in favor of the Township and the failure of the Court to grant summary judgment in their favor.

_____

[2] More specifically, the officers were to be paid for four ten-hour shifts per week but would only be required to work four nine-hour shifts.

3

## II.  Discussion[3]

Despite their insistence that their own motion for summary judgment should have been granted, Krause and Martin argue on appeal that summary judgment was improperly granted for the Township because there are material issues of fact in dispute as to whether four hours per week of paid time off satisfied the requirements of the FLSA.  We disagree.

The FLSA generally requires that employers provide overtime compensation when employees work over 40 hours during a week.  *See* 29 U.S.C. § 207(a)(1) (making it unlawful to employ an individual "for a workweek longer than forty hours[,] unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed").[4]  Generally, employers and employees cannot make agreements for compensation less than that provided for in the FLSA, and such agreements are unenforceable for policy reasons.  *See Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 740 (1981) ("FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies

---

[3] The District Court had jurisdiction over this case pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.  Our review of an order granting summary judgment is plenary.  *Groman*, 47 F.3d at 633.  "A grant of summary judgment is appropriate where the moving party has established that there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law." *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 266 (3d Cir. 2005) (citation and internal quotation marks omitted).

[4] The statute makes special allowances for public agencies responsible for fire protection and law enforcement, 29 U.S.C. § 207(k), but the specifics of those special terms are not claimed to be at issue here.

4

it was designed to effectuate.").  Because, however, it is difficult to determine precisely how many hours employees spend working at home, an exception allows employers and employees to reach a "reasonable agreement" regarding the amount of compensation to be received for work performed at home.  29 C.F.R. § 785.23.[5]  Such an agreement should "take[] into consideration all of the pertinent facts."  *Id*.  Section 785.23's exception has been construed by the U.S. Department of Labor to cover K9 police officers for the off-duty time they spend caring for their dogs.  *See* U.S. Dep't of Labor, Opinion Letter Regarding the Fair Labor Standards Act (FLSA), 1993 WL 901171 (Aug. 11, 1993).[6]  Likewise, courts have recognized that K9 officers' off-duty care of dogs constitutes work compensable under the FLSA.  *See Holzapfel v. Town of Newburgh, N.Y.*, 145 F.3d 516, 522 (2d Cir. 1998) ("[A] K-9 officer must be compensated for the

---

[5] That regulation generally recognizes that, for employees residing on the employer's premises or working at home, it is sometimes difficult to determine exactly how many hours were worked.  In those circumstances, an agreement that is reasonable and takes into account all the relevant facts will be accepted.  29 C.F.R. § 785.23.

[6] The Department of Labor Opinion states, in part, that:

> Certain training and "care" of a police dog at home by a canine officer is considered a part of the officer's principal activities … . We consider the term "care" to mean bathing, brushing, exercising, feeding, grooming, related cleaning of the dog's kennel or transport vehicle, and similar activities performed by the canine officer at home on workdays as well as on days off duty or during vacation periods.  Such work is considered to be compensable under the FLSA.  Care also includes time spent in administering drugs or medicine for illness and/or transporting the dog to and from an animal hospital or veterinarian. … the employer and the employee may work out a reasonable agreement as to compensable hours worked at home in canine care in addition to law enforcement work at the job site.

off-duty time that he spends performing the tasks involved in caring for and training his assigned police dog, unless the time devoted to a particular task is *de minimis*." (citation and internal quotation marks omitted)).[7]

Krause and Martin argue that the agreement they made with the Township was neither reasonable nor took into account all the pertinent facts and that, at the very least, there are material disputes of fact that preclude summary judgment on those issues. First, they argue that there was a material issue of fact regarding the reasonableness of the agreement, because much more than four hours a week was required to care for their dogs. Second, they argue that there was a genuine issue of material fact as to whether the agreement took into account all of the relevant facts and circumstances.

---

[7] There is some disagreement about the burden of proof with respect to the question of whether there was an agreement within the meaning of § 785.23. The Ninth Circuit has held that it is the employer's burden to demonstrate that there was an agreement to compensate K9 officers for their time worked in caring for the dogs while off duty. *Leever v. Carson City*, 360 F.3d 1014, 1018 (9th Cir. 2004) ("[T]he [Township] has the burden of proving, plainly and unmistakably, that (1) there was an agreement to compensate [Krause and Martin] for [their] overtime work caring for [the dogs], and (2) the agreement was reasonable, having taken into account all of the pertinent facts." (citation and internal quotation marks omitted)). The Sixth Circuit, on the other hand, has suggested that the employees must "satisfy their burden of showing that the agreement provided an unreasonably short amount of time to perform the assigned tasks that constitute FLSA work *and* an unreasonably small amount of non-monetary benefits to compensate them for any time deficiency." *Brock v. City of Cincinnati*, 236 F.3d 793, 807 (6th Cir. 2001) (internal quotation marks omitted). The Eighth Circuit is in accord with the Sixth, requiring that the employees show "that the agreement provided an unreasonably short amount of time to perform the assigned tasks." *Rudolph v. Metro. Airports Comm'n*, 103 F.3d 677, 684 (8th Cir. 1996). We need not decide the appropriate burden of proof here because, for the reasons discussed below, summary judgment in favor of the Township is appropriate even if we require it to demonstrate a reasonable agreement that took all pertinent facts into account.

In support of their argument that the agreement was not reasonable, Krause and Martin offered an expert opinion that off-duty care for each dog would require 22.6 hours per week. They also point out that the agreement was reached before the K9 unit was started, so that the agreement was made "without sufficient experience to even know how many off-duty hours would be required to care for the assigned dogs." (Appellant's Opening Br. at 33.) Krause and Martin contend that the Township cannot properly invoke § 785.23 because no one had enough experience to know what would be a reasonable amount of compensation.

The undisputed evidence shows, however, that Krause researched at length the duties and responsibilities associated with a K9 unit prior to the establishment of the unit by the Township. Further, in coming to the agreement to provide for one hour of comp time per shift, the officers themselves discussed the matter with McCormack. As time went on and the K9 officers acquired experience with the responsibilities of caring for the dogs, they not only failed to say anything indicating that their comp time arrangement was inadequate, they accepted its memorialization as part of a collective bargaining agreement.[8] *Brock*, 236 F.3d at 797 (noting that the K9 officers "should have raised any concerns about their compensation [agreement for off-duty care of the dogs]" as they arose).

While Krause and Martin cite the Ninth Circuit's decision in *Leever v. Carson City* to argue that the Township was obligated to make a reasonable investigation into the

_____

[8] Indeed, in 2005, Krause asked for an additional dog and informed that Township that he would not require additional compensation to care for that second dog.

7

number of off-duty hours required to care for the dogs, *Leever*, 360 F.3d at 1019, the evidence here is that Krause himself, on behalf of the Township, took on the task of investigating the feasibility and logistics of a K9 unit for the Township. There is no merit to the assertion that, to meet the requirements of the FLSA, another Township employee needed to make an investigation regarding the responsibilities associated with a K9 unit.

Krause and Martin also cite *Holzapfel* in support of their argument that the agreement was not reasonable. 145 F.3d at 516. In *Holzapfel*, a K9 officer sued under the FLSA after the employer unilaterally imposed a two-hour per week overtime limit on the officer's compensation. *Id*. at 526 ("No evidence suggests that plaintiff or any K-9 officer was involved in deciding that two hours of overtime was sufficient to care for a dog. Rather, the directive appears to have been unilaterally imposed by defendants."). The present case is quite different. There was no unilateral cap imposed by the Township. It is undisputed that the parties reached an agreement regarding the amount of comp time to be given as payment for the off-duty care of the dogs.

Krause and Martin again cite *Holzapfel* for the proposition that the Township's knowledge of whether they were working more than four hours per week is a genuine issue of material fact. They are wrong, however, because in the present case an agreement was made between the parties, and the regulations recognize that determining actual time worked can be difficult and is not a necessity.[9] *Brock*, 236 F.3d at 806

---

[9] As the District Court also noted, the Township provided the officers with the benefit of training and a dedicated take-home police vehicle in connection with their service on the K9 unit.

8

(noting that an employer would have difficulty "in attempting to monitor or measure how much 'work' the officers performed at home while off duty"). Further, a reasonable agreement need not match the actual number of hours worked, as there are undisputed benefits to having a trained police dog at home, *id*.; *cf. Rudolph v. Metro. Airports Comm'n*, 103 F.3d 677, 684 (8th Cir. 1996). ("Any time beyond the [compensable time] spent with their canine charges we presume stemmed from their personal devotion to the dogs, and was, therefore, not predominantly for the benefit of the employer." (citation and internal quotation marks omitted)). The Township was thus entitled to "rely on … the clear terms of the agreement." *Id.*

Likewise, Krause and Martin's argument that the agreement did not take into account all pertinent facts is unavailing. They say that, before entering into an agreement regarding their compensation, the Township had to have been "cognizant that the agreement had to deal with the employees' FLSA rights." *Brock*, 236 F.3d at 808. But McCormack's stated understanding that Krause and Martin would "have to be compensated on the handling of the dog[s]" sufficiently indicates that the agreement on comp time was aimed at meeting the requirements of the FLSA. (Joint App. at 8.) To the extent that Krause and Martin argue that McCormack had to invoke the FLSA by name in recognizing the officers' right to compensation, they are incorrect.

In sum, we agree that "the indeterminate nature of [a K9 officer's] task … makes [it] exactly the sort of work as to which it makes sense for the parties to come to an agreement, to eliminate complicated, repetitious, and hard-to-resolve disputes about exactly how much time it took to take care of the dogs each day." *Brock*, 236 F.3d at

9

805. We thus reject the attempt by Krause and Martin to set aside their agreement with the Township in this case.[10]

## III. Conclusion

For the forgoing reasons, we will affirm the judgment of the District Court.

---

[10] Krause and Martin also argue that the District Court erred in denying their motion for summary judgment. Because we affirm the grant of summary judgment in favor of the Township, Appellant's argument fails.