Paula LEEVER, Plaintiff–Appellant,

v.

CARSON, CITY of; Consolidated Municipality of Carson City, Defendants–Appellees.

No. 02–16525.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 9, 2003.

Filed March 4, 2004.

Day R. Williams, Carson City, NV, for the plaintiff-appellant.

Mark Forsberg, Deputy District Attorney, Carson City, NV, for the defendants-appellees.

Before: B. FLETCHER and TASHIMA, Circuit Judges, and POLLAK, District Judge.*

## OPINION

TASHIMA, Circuit Judge:

Paula Leever, a sheriff's deputy, appeals from the district court's order granting summary judgment in favor of her employer, Carson City (the "City"), and denying her own motion for partial summary judgment. Leever sued the City for unpaid overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201–219

---

* The Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

("FLSA"), alleging that the City failed to compensate her for overtime work spent caring for her assigned police dog. The City contends that it was exempt from the overtime provisions of the FLSA pursuant to 29 C.F.R. § 785.23 because it had a "reasonable agreement" to compensate Leever for her overtime work by way of a biweekly flat fee. Leever contends that she did not have an agreement with the City, and that, even if she did, the agreement was not reasonable as a matter of law. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse and remand.

## BACKGROUND

Leever began her career as a deputy with the Carson City Sheriff's Department in 1992. Leever was assigned to "canine" duty in 1995. As part of her responsibilities as a canine officer, Leever was required to care for and kennel her assigned police dog, "Scout," during her off-duty hours. Leever was responsible for grooming, feeding, bathing, and exercising Scout, and for maintaining Scout's physical and mental health. In addition, Leever was required to clean Scout's kennel regularly and expend extra effort to keep her own home clean due to the presence of the dog. Finally, Leever was required to spend off-duty hours training and socializing Scout in order to maintain Scout's fitness as a police dog. Leever claims that, on average, she spent 28 off-duty hours per week caring for and training Scout. The City assigned Leever an official vehicle to transport Scout to and from work, and it paid all of the costs associated with caring for and feeding Scout.

The City knew that Leever spent off-duty time caring for and training Scout and it admits that caring for and training Scout was compensable work under the FLSA. Rather than pay overtime wages, however, the City agreed to compensate Leever for her overtime work by way of a flat-fee salary differential. In 1995, the City and the Carson City Sheriff's Protective Association (the "Union"), which is the exclusive bargaining agent for Sheriff's deputies employed by the City and of which Leever is a member, negotiated a salary differential of $60 per bi-weekly pay period as compensation for the off-duty hours spent by canine officers working with their dogs. The term was incorporated into the 1996–99 Collective Bargaining Agreement ("CBA") as follows:

> CANINE OFFICER: An officer permanently assigned to canine duty shall receive a salary differential of $60.00 per pay period [2 weeks] for the care—and feeding of a dog.

The City did not ask Leever how much time she spent caring for Scout during her off-duty hours or attempt on its own to approximate the number of off-duty hours worked by canine officers when arriving at the salary differential. Rather, the City intended to establish a "flat-rate enhancement" for canine officers "in recognition of their jobs." In determining the amount of the salary differential, the City relied on figures it obtained from an informal survey of the compensation other Nevada law enforcement agencies provided to their canine officers.

Leever sued the City, alleging that she was entitled to overtime pay pursuant to the FLSA for her off-duty hours spent working with Scout. At the close of discovery, the City moved for summary judgment on the ground that it was exempt from the overtime provisions of the FLSA because it had a "reasonable agreement" under 29 C.F.R. § 785.23 with Leever to compensate her at a flat rate for her overtime work caring for Scout. Leever opposed the City's motion and moved for partial summary judgment as to the City's

liability on the ground that § 785.23 did not apply because she never agreed to accept a flat fee as payment for her overtime work and that, even if she did, the agreement was not "reasonable." The district court granted the City's motion and denied Leever's. Although the district court recognized that the salary differential was the equivalent of only one hour's pay per week, which was "insufficient for the tasks involved" in caring for and training Scout, it found that the agreement was reasonable as a matter of law primarily because it was negotiated at arms-length between the City and the Union. Leever timely appealed.

## STANDARD OF REVIEW

 We review the grant or denial of summary judgment *de novo*. *Hargis v. Foster*, 312 F.3d 404, 409 (9th Cir.2002). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir.2001) (en banc). The FLSA "is to be liberally construed to apply to the furthest reaches consistent with Congressional direction." *Klem v. County of Santa Clara*, 208 F.3d 1085, 1089 (9th Cir.2000).

## ANALYSIS

### I.

 The FLSA requires employers to pay overtime wages equal to one and one-half times the employee's regular rate for work performed in excess of 40 hours per week. 29 U.S.C. § 207(a). Law enforcement employers are governed by a slightly more permissive regime for computing overtime hours. *See* 29 U.S.C. § 207(k). The City does not dispute that Leever spent off-duty hours caring for Scout in addition to the work she performed during her 40–hour work week, and it concedes that caring for Scout was compensable work under the FLSA.[1] The City contends, however, that it was exempt from the overtime provisions of the FLSA pursuant to 29 C.F.R. § 785.23.[2] That regulation provides an exemption from the overtime pay requirement for employers whose employees work from their homes for extended periods of time, such that it would be difficult to compute the exact number of hours actually worked by the employee. *Id.* In those circumstances, an employer and an employee are permitted to agree on an alternative means of compensating the employee for overtime work, so long as the agreement is "reasonable" and takes into account "all of the pertinent facts." *Id.* The regulation reads, in relevant part:

---

1. Courts have generally agreed that caring for and training police dogs is compensable work under the FLSA. *See, e.g., Reich v. N.Y. City Transit Auth.*, 45 F.3d 646, 651 (2d Cir.1995) (holding that "walking, feeding, training, grooming and cleaning up are integral and indispensable parts of the [canine] handler's principal activities and are compensable as work"); *Levering v. D.C.*, 869 F.Supp. 24, 27 (D.D.C.1994) (holding that "feeding, exercising, and caring for" police dogs are "indispensable" parts of maintaining the dogs as law enforcement tools); *Truslow v. Spotsylvania County Sheriff*, 783 F.Supp. 274, 277 (E.D.Va.1992) (holding that care for police

dogs at home was an "integral and indispensable part of [officer's] principal activities as a deputy sheriff in the canine units").

2. Although we adopt the parties' nomenclature in referring to § 785.23 as providing for an "exemption" or "exception," we recognize that "[r]ather than providing employers with an exception to the FLSA overtime pay requirements, § 785.23 simply offers a methodology for calculating how many hours the employees actually worked within the meaning of the FLSA." *Brigham v. Eugene Water & Elec. Bd.*, 357 F.3d 931, 942 (9th Cir.2004).

**Employees residing on employer's premises or working at home.**

An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises. Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own. It is, of course, difficult to determine the exact hours worked under these circumstances and any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted.

*Id.*

■ Thus, in order to qualify for the exemption, the City has the burden of proving, "plainly and unmistakably," that (1) there was an agreement to compensate Leever for her overtime work caring for Scout, and (2) the agreement was "reasonable," having taken into account "all of the pertinent facts." *See Brigham*, 357 F.3d at 940 (" § 785.23 … suggests that the parties' agreement should be accepted only if it is 'reasonable' in light of the 'pertinent facts.' ").

**II.**

■ At the outset, Leever contends that she did not have an agreement with the City to be compensated for her overtime work caring for and training Scout. The City has shown otherwise. Although the

City did not negotiate the salary differential with Leever directly, it negotiated the 1996–99 CBA with the Union, which was acting as Leever's representative and exclusive bargaining agent. Leever contends that because she was not invited to participate in the negotiations, she never agreed to the flat fee. She relies on *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 526 (2d Cir.1998) (noting that there is no agreement for the purpose of § 785.23 where the terms are "unilaterally imposed" by the employer). We disagree. The uncontroverted evidence shows that the Union was authorized to represent Leever in contract negotiations and that the Union negotiated on Leever's behalf. The fact that Leever did not directly participate in the negotiations does not undermine the existence of the agreement itself.[3]

**III.**

■ The City failed, however, to show that its agreement with Leever was "reasonable" as a matter of law. Although this circuit has not yet ruled on the meaning of "reasonable agreement" under § 785.23, three other circuits have interpreted the regulation in circumstances similar to the facts of this case.

In *Holzapfel*, a canine officer claimed that he spent up to 45 off-duty hours per week working with his assigned police dog, "Bandit." *Holzapfel*, 145 F.3d at 520. The employer instructed the officer to fill out a weekly overtime slip requesting two hours' pay rather than calculate the actual

---

**3.** Leever correctly points out that even if the Union was authorized to represent her, it could not waive rights guaranteed to her under the FLSA. *See Barrentine v. Arkansas Best Freight Sys., Inc.*, 450 U.S. 728, 740, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981). The agreement to accept $60 per pay period in lieu of overtime pay, however, was not necessarily a waiver of her rights under the FLSA, but an attempt to conform to one of its exemptions. Moreover, *Barrentine* dealt only with statutory wage claims that arise under the FLSA independent of the CBA. *Id.* Here, Leever's claim was explicitly covered by a CBA provision negotiated pursuant to the exemption under § 785.23. Therefore, *Barrentine* does not apply.

amount of time he spent caring for Bandit. *Id.* The court held that there was no "agreement" between the employee and the employer because the two-hour overtime limit was imposed on the employee unilaterally. *Id.* at 526. Even if there had been an agreement, the court noted, it would have been unreasonable as a matter of law because the employer knew that the employee worked at least seven off-duty hours per week, but the agreement only provided for two hours of overtime pay. *Id.* at 526–27. Therefore, the agreement did not qualify the employer for the § 785.23 exemption as a matter of law. *Id.* at 527.

In *Rudolph v. Metropolitan Airports Commission,* 103 F.3d 677 (8th Cir.1996), two airport police officers sued their employer for overtime wages for their off-duty work with their police dogs. *Id.* at 678. The officers' contract provided that they would be paid one half-hour of overtime per on-duty day and one hour of overtime per off-duty day as compensation for their overtime work caring for their dogs. *Id.* at 679. The contract specified that the officers were not to spend more time caring for their dogs than they were paid for without seeking prior approval from the employer. *Id.* at 683. The court held that the agreement was reasonable, despite the fact that the employees claimed to have regularly worked in excess of the time for which they were paid, because the employees agreed not to do so and the employer was entitled to rely on the clear terms of the agreement. *Id.* at 684.

■ Leever contends that the salary differential agreement was unreasonable as a matter of law because it failed to take into account the number of hours she actually worked. We agree that the agree-

ment cannot be held to be reasonable as a matter of law. Apart from stating that "all of the pertinent facts" should be taken into consideration, the regulation does not specify what facts must be taken into consideration when forming an agreement under § 785.23. The cases interpreting the regulation, however, suggest that, at a minimum, an agreement must take into account some approximation of the number of hours actually worked by the employee or that the employee could reasonably be required to work. *See Rudolph,* 103 F.3d at 684 (holding that employer's agreement was reasonable because the employees were instructed not to work with their dogs for more hours than they were compensated for under their contracts); *Holzapfel,* 145 F.3d at 526–27 (noting that employer's agreement to pay canine officers for two hours of overtime per week was unreasonable where the employer knew that the employee worked at least seven over time hours per week). Letter Opinions of the Wage and Hour Administrator also indicate that the *very purpose* of an agreement pursuant to § 785.23 is to approximate the number of overtime hours actually worked. *See* Dep't of Labor, Wage & Hour Div., Op. Ltr., 1993 WL 901171 (Aug. 11, 1993) ("[T]he employer and the employee may work out a reasonable agreement *as to compensable hours worked* at home in canine care in addition to law enforcement work at the job site.") (emphasis added); Dep't of Labor, Wage & Hour Div., Op. Ltr., 1981 WL 179033 (Feb. 3, 1981) ("any reasonable agreement of the parties *as to the amount of hours worked* will be accepted, if it takes all of the pertinent facts into consideration") (emphasis added).[4] Finally, requiring parties to approximate the number of hours worked when forming an agreement pur-

---

4. We accept the Department of Labor's interpretive regulations of the FLSA, including § 785.23, as persuasive, although they are not binding. *See Brigham,* 357 F.3d 931, 940..

suant to § 785.23 is consistent with the purpose of the FLSA, which is to ensure that employees are paid for "all hours worked." *See Alvarez v. IBP, Inc.*, 339 F.3d 894, 902 (9th Cir.2003) ("It is axiomatic, under the FLSA, that employers must pay employees for all 'hours worked.' ").

There is no evidence in the record that either the City or the Union made any inquiry into the number of hours spent, or reasonably required to be spent, by Leever or other canine officers on canine care when negotiating the "canine officer" provision in the CBA. In fact, the City admits that it did not know how much time Leever spent caring for Scout during her off-duty hours. Rather, when determining the amount of the salary differential for canine officers, the City relied exclusively on an asserted "comprehensive parity study," which summarized the pay provided by other law enforcement agencies to their canine officers. The "study," however, consisted of nothing more than handwritten notes on a desk calendar. Because no author is identified, the sources of information are not made clear, and no dates are indicated, there is nothing in the record to support that the survey was based on reliable research methods or knowledgeable and accurate sources. More importantly, the City made no showing that the canine officers employed by the agencies surveyed had hours or responsibilities comparable to Leever's, what non-monetary benefits they received, or that their overtime compensation agreements were "reasonable" for the purpose of § 785.23.

The salary differential in Leever's contract bears no resemblance to the compensation to which she would be entitled in overtime pay based on the number of hours she claims she actually worked. Leever claims that she spent 28 off-duty hours per week working with Scout. During the time the 1996–99 CBA was in effect, Leever's regular wages ranged from $17.34 per hour (January 1996) to $20.51 (November 1999). Based on a 40 hour work week, Leever's wage rate at the time she resigned, and an overtime rate of one and one-half times Leever's regular pay rate, the $60.00 salary differential approximated one hour of overtime pay per week.[5] As the district court noted, one hour per week is "insufficient for the tasks involved" in performing the duties of a canine officer.

The City correctly points out that § 785.23 does not require it continually to keep track of the exact number of off-duty hours its canine officers spend working with their dogs each day. As courts have noted, it is the inherent indeterminacy of a canine officer's off-duty hours and responsibilities that makes the application of § 785.23 appropriate. *See Holzapfel*, 145 F.3d at 527; *Rudolph*, 103 F.3d at 681 ("The indeterminate nature of these tasks, we think, makes them exactly the sort of work as to which it makes sense for the parties to come to an agreement, to eliminate complicated, repetitious, and hard-to-resolve disputes about exactly how much time it took to take care of the dogs each day."). The regulation does, however, require employers to take into account "all the pertinent facts" when forming an agreement pursuant to § 785.23, and the number of hours actually worked is clearly

---

**5.** We do not mean to suggest that the rate of pay for home canine care must be equal to the rate of pay for law enforcement work. We need not and do not take any position on that issue. We note that the Wage and Hour Administrator's position is that "dog care activities ... do not have to be compensated at the same rate of pay as paid for law enforcement activities." Dep't of Labor, Wage & Hour Div., Op. Ltr., 1993 WL 901171 (Aug. 11, 1993).

"pertinent" to the question of how much compensation ought to be paid for that work. *See* Dep't of Labor, Wage & Hour Div., Op. Ltr., 1993 WL 901171 (Aug. 11, 1993). Thus, although the City was not required to account for the exact number of hours worked by its canine officers each day, it was required, at minimum, to make a reasonable investigation of the number of off-duty hours its canine officers generally spent working with their dogs each pay period, and to take that figure into account when negotiating the agreement.[6]

In holding that an agreement under § 785.23 must take into account some approximation of the hours actually worked, or reasonably required to be worked, by the employee, our approach is consistent with the Sixth Circuit's approach to evaluating the reasonableness of such agreements. In *Brock v. City of Cincinnati*, 236 F.3d 793 (6th Cir.2001), the Sixth Circuit endorsed the approach of reviewing all of "the facts and circumstances revealed in the record," in determining whether an agreement to compensate canine officers for their overtime work was reasonable. *Id.* at 807. The court emphasized that when evaluating the reasonableness of an agreement under § 785.23, it considered "[the contract's] terms and all of the facts and circumstances of the parties' relationship." *Id.* at 806. The court noted that the actual amount of time spent working was "a reference point for a range of reasonable agreements," but that the range was "widened by a variety of non-monetary costs and benefits" provided by the employer. *Id.* at 807. It considered the

contract's allowance of two on-duty days per 28 day cycle to exercise and train the dogs, the providing of officers with official vehicles to transport their dogs to and from work, that officers were given paid time off to travel to police dog competitions, and that officers were compensated for the costs associated with caring for the dogs. *Id.* at 807. The court held that, viewed in light of all of the circumstances, the contract was "reasonable." *Id.* We agree that the reasonableness of a § 785.23 agreement must be assessed in light of all of the surrounding circumstances.

## CONCLUSION

Here, the district court determined that the agreement was reasonable as a matter of law solely because it was negotiated by the City and the Union at arms-length and incorporated into the CBA. Because it did not consider all of the facts and circumstances surrounding the agreement in reaching its conclusion that the agreement was reasonable under § 785.23, we reverse the grant of summary judgment in favor of the City and remand this case to the district court for further proceedings consistent with this opinion.[7]

**REVERSED and REMANDED.**

6. The City's argument that it "could not have known" how many hours Leever spent working with Scout each pay period and how much of Leever's time with Scout was "truly devoted to work" is unpersuasive. Its obligation was to make an investigation as to the number of off-duty hours canine officers were reasonably required to work per pay period

and to take a reasonable estimate of such hours into account in its CBA negotiations.

7. For the reasons stated in our opinion, we also decline, on this record, to conclude that the agreement is unreasonable as a matter of law.