**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

EDNA GAROFOLO; ANGELO GAROFOLO,
all other similarly situated current
and former employees who file
written consents to join this action,
                *Plaintiffs-Appellants,*

v.

DONALD B. HESLEP ASSOCIATES,
INCORPORATED, 360 WEST,
                *Defendant-Appellee.*

No. 04-1882

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
David G. Lowe, Magistrate Judge.
(CA-03-870-3)

Argued: February 2, 2005

Decided: April 22, 2005

Before NIEMEYER, MICHAEL, and DUNCAN, Circuit Judges.

---

Affirmed by published opinion. Judge Duncan wrote the opinion, in
which Judge Niemeyer and Judge Michael joined.

---

## COUNSEL

David Raymond Simonsen, Jr., Richmond, Virginia, for Appellants.
Daniel Scott Gordon, Richmond, Virginia, for Appellee.

**OPINION**

DUNCAN, Circuit Judge:

In this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, Edna and Angelo Garofolo appeal from the district court's order granting summary judgment to their former employer, Donald B. Heslep Associates, Inc., 360 West ("Heslep"). The Garofolos contend that Heslep failed to compensate them for overtime work in accordance with the FLSA. The district court[1] awarded summary judgment to Heslep on the grounds that the Garofolos were fully compensated under the terms of a reasonable employment agreement between the parties. Finding no error, we affirm.

I.

A.  *Employment Agreement*

Because this appeal is from an order granting summary judgment, we recite the facts in the light most favorable to the non-moving party. *Dalton v. Capital Assoc. Indus., Inc.*, 257 F.3d 409, 412 (4th Cir. 2001).

Heslep operates self-storage facilities in Virginia under the general trade name Blue & Gray Self Storage. At each storage facility, Heslep employs two "resident managers" to operate the facility on a daily basis. The resident managers are responsible for various duties, including managing the business office and performing maintenance, grounds work, and security tasks. The resident managers are also responsible for responding to emergencies that arise during "gate hours"—the period of time when the office is closed, but the gate remains open for customers to access their storage units. For the convenience of the employer, the resident managers live full-time in an apartment located above the business office.

---

[1]Pursuant to the Federal Magistrate Judge Act, 28 U.S.C. § 636(c)(1), and Rule 72 of the United States District Court for the Eastern District of Virginia, this case was referred to a federal magistrate judge for a final decision on January 8, 2004. For ease of reference, we refer to the proceedings below as the "district court" proceedings.

In 1998, Heslep hired the Garofolos to work as resident managers of its Blue & Gray Self Storage facility located on U.S. Route 360 in Midlothian, Virginia. In acceptance of their employment, the Garofolos entered into a Resident Manager Employment Agreement, which included, among other things, specific terms regarding hours of employment, job duties, and compensation. With respect to hours of employment, the storage facility had office hours from 9:00 a.m. to 6:00 p.m., Monday through Friday, and from 9:00 a.m. to 1:00 p.m. on Saturdays. The business office was closed on Sundays. The gate at the storage facility remained open from 7:00 a.m. to 6:00 p.m., Monday through Saturday, and from 9:00 a.m. to 6:00 p.m. on Sundays.[2]

Because the Garofolos resided on the premises, the agreement provided that they were free to divide their time between work and private pursuits. In particular, the agreement stated that during office and gate hours, the Garofolos were "free to engage in normal private pursuits, including eating, sleeping, entertaining, and leaving freedom [sic] from all duties." J.A. at 106. In light of the Garofolos' freedom to enjoy private pursuits on the job, as well as the sporadic nature of their duties after office hours, the Garofolos maintained an irregular work schedule that was not suitable to using a time card system to record the exact number of hours worked. Accordingly, the parties agreed at the outset on 40 hours per week as a reasonable estimate of the hours worked by each employee. In particular, the agreement provided that:

> In view of the Employee's respective duties and the hours of work, the Employer and each Employee acknowledge the difficulty in determining the exact number of hours worked by each Employee and, therefore agree that in accordance with Section 785.23 of the Federal Wage-Hour Law, forty (40) hours shall constitute a reasonable estimate of the hours worked each week (Monday through Sunday). It is further agreed that each estimate takes into consideration all of the pertinent factors of each Employee's respective employment and all duties and work performed in connection therewith, including all normal and "on-call" work.

---

[2]During daylight savings time, gate hours were extended to 7:00 p.m.

*Id.* at 107.

Thus, the Garofolos agreed to maintain, and to be compensated based upon, a 40 hour schedule per week. To this end, the agreement set forth specific instructions on how the Garofolos could accomplish their weekly duties within a 40 hour schedule. First, during office hours, the Garofolos were expected to divide the workload so that each could attend to different duties, thereby enabling them, as a team, to accomplish as much work as possible. For example, while one employee managed the business office and completed administrative duties, the other was available to perform maintenance work and security checks. Although the Garofolos were free to arrange their own schedules, Heslep provided a sample schedule illustrating how the employees could accomplish their duties within a 40 hour workweek by dividing the workload. Second, the agreement authorized only one resident manager to be on-call during gate hours to respond to emergencies and to perform any duties that were not completed during office hours.

In addition, the employment agreement required the Garofolos to execute a "Monthly Hours Worked Certification" form that Heslep provided. J.A. at 107. The Garofolos were asked to submit this certification every month, indicating whether 40 hours continued to be a reasonable estimate of their actual workweek. The agreement also provided for overtime compensation if unusual circumstances caused either employee to exceed a 40 hour schedule in a given week. The Garofolos agreed to notify Heslep within 24 hours of incurring the overtime and to report the overtime in their monthly "check sheets," which they submitted for payroll purposes.

Finally, with respect to compensation, the Garofolos were promised a monthly salary of $900.00, a two-bedroom apartment on the premises valued at $750.00 a month, and health and dental benefits.

B.  *Overtime Claim*

The Garofolos began their employment as resident managers for Heslep on November 2, 1998 and continued in this capacity until their termination in July 2003. The Garofolos claim that from October 2000 to July 2003, they regularly worked more than 40 hours per

week without compensation for overtime. During this period, the Garofolos never sought to modify their employment agreement to reflect that 40 hours was not a fair estimate of their workweek. Nor did they submit any requests for overtime pay during this period. The Garofolos submitted their only request for overtime compensation in 1999, and they were paid accordingly. The Garofolos never requested overtime pay after 1999 because a Regional Manager, Edward Pawlowski, told them that submitting overtime requests "doesn't look good." J.A. at 93-94. Accordingly, from January 2000 until March 2003, the Garofolos submitted monthly certifications affirming an estimated workweek of 40 hours or less.[3] In addition, the Garofolos never requested overtime compensation in their payroll "check sheets" after 1999. Nevertheless, although the Garofolos did not request overtime compensation as provided in their employment agreement, they "continued to talk with Mr. Pawlowski about their overtime work." Appellants' Br. at 6.

On October 20, 2003, the Garofolos filed suit in the United States District Court for the Eastern District of Virginia, seeking to recover overtime wages pursuant to § 7(a) of the FLSA.[4] As the factual basis for this claim, the Garofolos submitted time charts, estimating the number of hours they worked per week from October 2000 to July 2003. The charts, however, were not based upon contemporaneous records of actual work time. Rather, in 2003, Edna Garofolo prepared these estimates retroactively by calculating the number of hours the storage facility was open per week, and then subtracting any time they spent away from the facility on personal appointments.[5]

---

[3]The Garofolos submitted no time certifications from April to July of 2003.

[4]Section 7(a) provides that:

Except as otherwise provided in this section, no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a) (2004).

[5]The Garofolos estimated the time they spent on personal appointments by referring to calendars they kept from 2000 to 2003.

The district court granted summary judgment to Heslep on the grounds that the Garofolos' overtime claim was barred by 29 C.F.R. § 785.23 (2004), a Department of Labor regulation interpreting the FLSA. Specifically, section 785.23 provides that:

> An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises. Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own. It is, of course, difficult to determine the exact number of hours worked under these circumstances and *any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted. . . .*

29 C.F.R. § 785.23 (2004) (emphasis added). The district court held that the agreement to compensate the Garofolos for 40 hours per week was a "reasonable agreement" within the meaning of section 785.23. In particular, the court ruled that the 40 hour estimate was reasonable, inasmuch as the Garofolos enjoyed considerable time on the job for private pursuits and were expected to divide their work so as to accomplish as many tasks as possible within a 40 hour schedule. As further evidence of the agreement's reasonableness, the district court noted that the Garofolos were entitled to receive overtime pay if either employee worked more than 40 hours in a given week.

The district court also held that the Garofolos' time charts were legally insufficient to put in issue the reasonableness of the employment agreement. The court noted that the Garofolos calculated these estimates on the assumption that they were working every hour that the storage facility was open. The court observed, however, that section 785.23 establishes a presumption that employees residing on the employer's premises are not working the entire time they are on the premises. *See Jarrett v. ERC Properties, Inc.*, 211 F.3d 1078, 1082 (8th Cir. 2000) (discussing presumption that resident employees are not working the entire time they are on the job). Because the Garofolos produced no evidence rebutting the presumption established by section 785.23, the district court held that the time charts failed to

create a triable issue of fact concerning the agreement's reasonableness. The district court accordingly entered summary judgment in favor of Heslep and dismissed the Garofolos' complaint with prejudice. This appeal followed.

## II.

We review the district court's order granting summary judgment de novo, viewing the facts in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party. *White v. BFI Waste Services, LLC*, 375 F.3d 288, 294 (2004). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In particular, the relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## III.

The FLSA requires employers to pay overtime wages equal to one and one-half times the employee's regular rate for all work performed in excess of 40 hours per week. 29 U.S.C. § 207(a). The Supreme Court has interpreted this provision as "necessarily indicative of a Congressional intention to guarantee either regular or overtime compensation for all actual work or employment." *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944). As a result, the right to receive overtime compensation under the FLSA "cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 740 (1981) (internal quotations omitted).

The fact that overtime rights are nonwaivable "does not foreclose, of course, reasonable provisions of contract or custom governing the computation of work hours where precisely accurate computation is difficult or impossible." *Muscoda*, 321 U.S. at 603. Section 785.23 demonstrates this principle by authorizing "the use of a 'reasonable

agreement' to determine the number of compensable hours due an employee who works at home or who lives on the employer's premises." *Rudolph v. Metropolitan Airports Comm'n*, 103 F.3d 677, 681 (8th Cir. 1996). As one court has explained:

> Because of the difficulty in determining the exact hours worked in circumstances where unsupervised employees can divide their time between "work" and personal pursuits, "any reasonable agreement of the parties which takes into account all of the pertinent facts will be accepted." 29 C.F.R. § 785.23. Similarly, when "work" might itself be a personal pursuit, resolving whether particular efforts were expended necessarily and primarily for the benefit of the employer proves so unrealistic that courts should not only accept and enforce reasonable agreements, but should encourage them.

*Brock v. City of Cincinnati*, 236 F.3d 793, 805 (6th Cir. 2001). The regulation encompasses a wide range of employment relationships and circumstances, and thus there is no single generic test for "reasonableness" under section 785.23. Ultimately, an agreement reached pursuant to section 785.23 is binding if it is reasonable in light of "all of the pertinent facts" of the employment relationship. *Leever v. City of Carson*, 360 F.3d 1014, 1018 (9th Cir. 2004).[6] As the party seeking the benefit of section 785.23, Heslep bears the burden of proving that the employment agreement at issue was reasonable. *Id.*

Once a motion for summary judgment is made and supported, "the nonmoving party may not rest on the allegations in his or her plead-

---

[6]The district court characterized section 785.23 as an "exception" to the overtime requirements of the FLSA. J.A. at 268. While some courts have described the regulation as a statutory exception, we agree with the Garofolos that "rather than providing employers with an exception to the FLSA over-time pay requirements, section 785.23 simply offers a methodology for calculating how many hours the employees actually worked within the meaning of the FLSA." *Leever*, 360 F.3d at 1018 n.2 (internal quotations omitted). The district court did not commit reversible error in characterizing section 785.23 as an "exception," however, since it ultimately applied the regulation correctly.

ing, but must produce sufficient evidence that demonstrates that a genuine issue exists for trial." *Celotex Corp.*, 477 U.S. at 324. Here, Heslep made and supported its motion by proffering an agreement, signed by the Garofolos, acknowledging that 40 hours a week was a reasonable estimate of the hours actually worked. Heslep went beyond that, in fact, by providing guidance as to how the required duties could be accomplished within 40 hours.

To ensure that the original estimate continued to be fair, the agreement provided a mechanism by which the Garofolos regularly updated Heslep concerning whether 40 hours was a reasonable estimate of their workweek. For nearly three years, the Garofolos submitted monthly certifications confirming that 40 hours continued to be a reasonable estimate of the time needed to complete their duties as resident managers. Finally, the agreement provided for overtime pay if either employee exceeded 40 hours in a given week. For the period in question, the Garofolos never submitted a request for overtime compensation in accordance with the terms of their employment agreement.[7]

In response, the Garofolos contend that the agreement was unreasonable because they regularly worked more than 40 hours per week. As evidence, they rely upon time charts created by Mrs. Garofolo after the fact estimating their hours from October 2000 to July 2003 retrospectively. The estimates were not based upon contemporaneous records of actual work time. Rather, they reflect the hours when the storage facility was open, from which the Garofolos' personal time was subtracted. The estimates are premised, in other words, on the Garofolos' assumption that they were entitled to receive compensa-

---

[7]Even construed in the light most favorable to the plaintiffs, Edward Pawlowski's statement that reporting overtime "doesn't look good" fails to support a reasonable inference that the Garofolos feared reprisal or retaliation for reporting overtime. At most, the statement reaffirms that the Garofolos were expected to maintain a 40 hour workweek as provided in the employment agreement. Moreover, the Garofolos' own allegations that they continued to "talk with" Pawlowski and other Regional Managers about their overtime work, precludes any justifiable inference that the Garofolos were threatened or coerced into forfeiting overtime pay.

tion for every hour that the facility was open. However, in light of the difficulty in separating "work" time from personal time for employees who live on site, section 785.23 establishes a presumption that such employees are not working the entire time they are on the premises. *Jarrett*, 211 F.3d at 1082. The estimates prepared by Mrs. Garofolo do not acknowledge, let alone rebut, this presumption. The Garofolos have come forward with no evidence to suggest that they were working the entire time that they were present at the storage facility. We therefore agree with the district court that the time charts do not create a triable issue of fact concerning whether the employment agreement was reasonable.

Standing alone, proof that the Garofolos worked more than 40 hours per week would not preclude summary judgment in this case. As one court explained, "[i]t is not enough for the plaintiffs to show that they worked more than agreed. They must show that the agreement provided an unreasonably short amount of time to perform the assigned tasks." *Rudolph*, 103 F.3d at 684. In this case, the Garofolos have presented no evidence that the agreement provided insufficient time to perform their duties at the storage facility. The only evidence the employees have presented consists of the estimates showing that they worked more than 40 hours per week and that they ignored the instructions in the agreement as to how they could maintain a 40 hour schedule. It is undisputed that the Garofolos chose not to divide the workload as they were instructed in the employment agreement. They also refused to adhere to the requirement that only one resident manager should be on-call during gate hours.[8] The Garofolos could expect to accomplish less under these conditions and perhaps work more

---

[8]Angelo Garofolo explained that:

A:   We usually worked together.

Q:   Wasn't the whole idea of having two persons to split up the work?

A:   Yeah.

Q:   Why would you always work together?

A:   Because we're a team. We're a married couple. We do everything together approximately.

J.A. at 74.

than 40 hours per week. Heslep, however, was entitled to rely upon the Garofolos "to follow the clear terms of their employment agreement." *Rudolph*, 103 F.3d at 684. The fact that the Garofolos chose to ignore Heslep's guidance on how to carry out their responsibilities within a 40 hour schedule does not create a triable issue of fact concerning the reasonableness of the agreement under section 785.23.

Finally, we address the remaining contention that the district court erred in holding that the employment agreement was reasonable without making any finding regarding the actual number of hours the Garofolos worked. Imposing such a requirement would defeat the purpose of section 785.23. The regulation contemplates situations in which it is difficult, if not impossible, to determine the exact amount of time worked.

Contrary to the Garofolos' assertion, the Ninth Circuit's decision in *Leever* does not require such a finding. *Leever* held that since employers must consider all relevant facts when reaching an agreement pursuant to section 785.23, the agreement "must take into account some approximation of the hours actually worked, or reasonably required to be worked, by the employee." *Leever*, 360 F.3d at 1021. In this case, the employment agreement required the Garofolos to regularly confirm whether 40 hours was a reasonable estimate of their actual workweek. The employees have presented no evidence to suggest that the monthly certification procedure was insufficient to ensure a reasonable agreement under section 785.23.

IV.

Viewing the facts in the light most favorable to the Garofolos, we conclude that there are no triable issues with respect to whether the agreement to receive compensation for 40 hours per week was reasonable. The agreement was therefore binding under 29 C.F.R. § 785.23, and Heslep was entitled to judgment as a matter of law. Accordingly, the district court's order granting summary judgment to Heslep is

*AFFIRMED*.