Silvero DE GUZMAN

v.

PARC TEMPLE LLC, et al.

No. CV 07–1071–RC.

United States District Court,
C.D. California.

Feb. 19, 2008.

Dennis W. Rihn, Dennis W. Rihn Law Office, Glendale, CA, Robert R. Ronne, Robert R. Ronne Law Offices, El Segundo, CA, for Silvero de Guzman.

Brian F. Van Vleck, Van Vleck Turner and Zaller, Los Angeles, CA, for Parc Temple LLC, et al.

**PROCEEDINGS: (IN CHAMBERS) ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

ROSALYN M. CHAPMAN, United States Magistrate Judge.

On January 29, 2008, defendants filed a notice of motion and motion for summary judgment or, in the alternative, partial summary judgment, a supporting memorandum of points and authorities, a statement of uncontroverted facts and conclusions of law and several supporting declarations and exhibits, and plaintiff filed an opposing memorandum of points and authorities, a statement of genuine issues, opposing declarations and a response to defendants' statement of purported uncontroverted material facts. On February 8, 2008, defendants filed a reply. This matter is decided in Chambers without oral argument, pursuant to Local Rule 7–15.

**BACKGROUND**

**I**

On January 17, 2007, plaintiff Silvero De Guzman filed a complaint in the Los Angeles County Superior Court against defendants Parc Temple LLC, Parc Temple LLC dba Seabreeze Homes, Susan David and Does 1–100, claiming violations of California Labor Code §§ 510 and 1194 and the Fair Labor Standards Act ("FLSA"). On February 14, 2007, defendant Parc Temple answered the complaint and raised multiple affirmative defenses, and on February 15, 2007, defendant Parc Temple removed the action to this district court. On February 22, 2007, defendant David

joined in the removal and defendant Parc Temple's answer.

## II

 The summary judgment documents establish the following relevant facts: In February 2004, David and her brother, Augusto David, formed Parc Temple LLC, a limited liability company that operates Seabreeze Homes, a level 4D and 4F residential care home ("the Home") for developmentally disabled adults located in a five-bedroom house in Lawndale, California. Declaration of Susan David ("David Decl.") ¶¶ 2–3, 6–7, Exhs. A–B;[1] Declaration of Lolita Gusilatar ("Gusilatar Decl.") ¶ 4; Deposition of Susan David ("David Depo.") at 12:18–20, 14:5–13. David is the President and Secretary of Parc Temple, and owns 70% of the limited liability company, while her brother owns the remaining 30%. David Decl. ¶¶ 1, 6. Parc Temple receives a fixed per diem payment from a "Regional Center" for each residential client who lives in the Home. David Decl. ¶ 2.

Plaintiff was employed by Parc Temple from March 24, 2006, until January 15, 2007. David Decl. ¶ 10; Declaration of Silverio de Guzman ("de Guzman Decl.") ¶ 2; Deposition of Silverio de Guzman ("de Guzman Depo.") at 31:19–33:20. During plaintiff's employment, the Home housed four developmentally disabled adults, who required various degrees of assistance in their daily activities, David Decl. ¶¶ 2, 4; de Guzman Decl. ¶¶ 3–4; Gusilatar Decl. ¶¶ 5–6; some residents had emotional outbursts and behavior issues. de Guzman

Decl. ¶ 5. On most weekdays, the residents went to a day program from 8:00 a.m. or so until 2:00 p.m., unless a resident refused to go; however, on weekends and holidays, the residents did not attend a day program, but were continuously at the Home or were taken on an excursion for part of a day. de Guzman Decl. ¶ 6; Gusilatar Decl. ¶¶ 12, 16.

## DISCUSSION

### I

Federal Rule of Civil Procedure 56(c) provides for the granting of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Judgment must be entered "if ... there can be but one reasonable conclusion as to the verdict.... [However, i]f reasonable minds could differ," judgment should not be entered in favor of the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of identifying the elements of the claim in the pleadings, or other evidence which the moving party "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *MetroPCS,*

---

1. Plaintiff makes numerous objections to defendants' several declarations, including David's declaration. In each instance, however, plaintiff cites all or most of a paragraph in the declaration and makes multiple objections without specifying which objection pertains to which statement in the paragraph. Thus, plaintiff's objections are not specific and are denied. Moreover, "[t]o survive sum-

mary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001); *Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir.2003), *cert. denied*, 541 U.S. 937, 124 S.Ct. 1663, 158 L.Ed.2d 358 (2004).

*Inc. v. City & County of San Francisco,* 400 F.3d 715, 720 (9th Cir.2005). "Material facts are those which may affect the outcome of the case." *Long v. County of Los Angeles,* 442 F.3d 1178, 1185 (9th Cir. 2006); *S.E.C. v. Seaboard Corp.,* 677 F.2d 1301, 1306 (9th Cir.1982). The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553; *Porter v. Cal. Dep't of Corr.,* 419 F.3d 885, 891 (9th Cir.2005). "A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party." *Long,* 442 F.3d at 1185; *Galen v. County of Los Angeles,* 477 F.3d 652, 658 (9th Cir.2007).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.' " *Hunt v. Cromartie,* 526 U.S. 541, 552, 119 S.Ct. 1545, 1551–52, 143 L.Ed.2d 731 (1999) (quoting *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513); *Groh v. Ramirez,* 540 U.S. 551, 562, 124 S.Ct. 1284, 1293, 157 L.Ed.2d 1068 (2004). However, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citation omitted); *Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir.2001) (en banc).

## II

At the time of plaintiff's employment, the Fair Labor Standards Act ("the FLSA") provided, in pertinent part, for wages of not less than $5.15 an hour and required paying an employee who worked more than 40 hours a week overtime pay of "not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. §§ 206(a), 207(a)(1) (2007). The plaintiff complains he worked overtime but did not get the proper pay. However, defendants deny this claim for several reasons.

First, defendants contend plaintiff is covered by the "home worker exception" to the FLSA, which provides:

An employee who resides[ [2] ] on his employer's premises on a permanent basis

2. In 1981, the Department of Labor released an Opinion Letter clarifying what it means to "reside" on an employer's premises, stating "[w]here the facilities offered by the employer provide a home-like environment with private quarters separate from the residents of the group home, we would regard such employees as residing there...." Opinion Letter Fair Labor Standards Act, 1981 WL 179033 (Dep't of Labor, Feb. 3, 1981). Subsequently, in 1988, the Department of Labor issued an enforcement policy for residential care (group home) establishments, which defined "private quarters" as "living quarters that are furnished; are separate from the 'clients' and from any other staff members; have as a minimum the same furnishings available to clients (e.g., bed, table, chair, lamp, dresser, closet, etc.) and in which the employee is able to leave his or her belongings during on- and off-duty periods" and "home-like environment" as "facilities including 'private quar-

ters' ... and also including on the same premises facilities for cooking and eating; for bathing in private; and for recreation (such as TV). The amenities and quarters must be suitable for long-term residence by individuals and must be similar to those found in a typical private residence or apartment, rather than those found as dormitories, barracks, and short-term facilities for travelers." Enforcement Policy, Fair Labor Standards Act, 1988 WL 614199 (Dep't of Labor, June 30, 1988).

Here, plaintiff has presented undisputed evidence that he was not provided with his own room at the Home, rather, he usually slept on a couch in the living room. de Guzman Decl. ¶ 14; de Guzman Depo. at 210:15–18. Thus, were this Court to apply the Department of Labor's opinion letter and enforcement policy, plaintiff would not come within the requirements of Section 785.23 since he was

or for extended periods of time is not considered as working all the time he is on the premises. Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own. It is, of course, difficult to determine the exact hours worked under these circumstances and any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted.

29 C.F.R. § 785.23 (footnote added). "Rather than providing employers with an exception to the FLSA overtime pay requirements, § 785.23 simply offers a sound methodology for calculating how many hours the employees actually worked within the meaning of FLSA." *Brigham v. Eugene Water & Elec. Bd.*, 357 F.3d 931, 942 (9th Cir.2004).

■ Although "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate [,]" *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 740, 101 S.Ct. 1437, 1444–45, 67 L.Ed.2d 641 (1981) (citations omitted), that " 'does not foreclose, of course, reasonable provisions of contract or custom governing the computation of work hours where precisely accurate computation is difficult or impossible.' " *Garofolo v. Donald B. Heslep Assoc., Inc.*, 405 F.3d 194, 199 (4th Cir.2005) (quoting *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 603, 64 S.Ct. 698, 705, 88 L.Ed. 949 (1944)). "Section 785.23 demonstrates this principle by authorizing the use of a 'reasonable agreement' to determine the number of compensable hours due an employee who works at home or who lives on the employer's premises." *Garofolo*, 405 F.3d at 199 (citation and internal quotation marks omitted). Since defendants seek to benefit from Section 785.23, it is their "burden of proving 'plainly and unmistakably,' that (1) there was an agreement to compensate [plaintiff] for [his] overtime work . . ., and (2) the agreement was 'reasonable,' having taken into account 'all of the pertinent facts.' " *Leever v. City of Carson*, 360 F.3d 1014, 1018 (9th Cir.2004); *Garofolo*, 405 F.3d at 199–200.

■ Generally, "an agreement must take into account some approximation of the number of hours actually worked by the employee or that the employee could reasonably be required to work." *Leever*, 360 F.3d at 1019. Here, the parties have presented conflicting evidence about the existence of a "reasonable agreement" addressing plaintiff's compensation. It is undisputed that plaintiff received $1,400.00 per month and "room and board" for his services as a live-in caregiver, David Decl. ¶ 5; however, it is disputed whether plaintiff's monthly wages covered overtime work. In this regard, plaintiff states David told him he would be paid overtime in addition to his monthly wages, but never gave plaintiff any information about what she meant by "overtime" and never paid him any overtime. de Guzman Depo. at 28:21–29:21, 33:21–34:18, 217:3–218:6. Nor did plaintiff ever agree to estimate the hours he worked for defendants. de Guz-

---

not provided with "private quarters" in a "home-like environment." *See Chao v. Jasmine Hall Care Homes, Inc.*, 2007 WL 4591438, *3 (E.D.Cal.) (finding "it is reasonable to interpret 'reside' in § 785.23 to mean living alone in a private room" and concluding "[d]efendants may not invoke § 785.23 as

an exemption to the FLSA's requirements for those employees who share a bedroom."). Nevertheless, the Court does not further address this issue because the parties have not properly briefed it or addressed what weight, if any, the Court should give to the Department's opinion letter and enforcement policy.

man Decl. ¶ 16. Thus, the Court cannot find, as a matter of law, that the parties had a "reasonable agreement" regarding plaintiff's compensation and hours, and defendants cannot avail themselves of Section 785.23.

Beyond this, the parties also disagree about the characteristics of plaintiff's work, the hours he worked, and whether he was ever required to work overtime. "As a general rule the term 'hours worked' will include: (a) All time during which an employee is required to be on duty or to be on the employer's premises or at a prescribed workplace and (b) all time during which an employee is suffered or permitted to work whether or not he is required to do so." 29 C.F.R. § 778.223. In this regard,

> [p]eriods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked. He is not completely relieved from duty and cannot use the time effectively for his own purposes unless he is definitely told in advance that he may leave the job and that he will not have to commence work until a definitely specified hour has arrived.

29 C.F.R. § 785.16.

■ Here, defendants maintain plaintiff never worked more than 8 hours a day or 40 hours a week. See, e.g., Gusilatar Decl. ¶¶ 2–3, 8–10, 18–21. However, plaintiff swears he was not allowed to leave the Home without permission, and he was given permission to leave only from Thursday night, at 8:00 p.m., until Friday night, at 8:00 p.m. de Guzman Decl. ¶¶ 7–8, 11; de Guzman Depo. at 181:18–183:11. Moreover, the Home operates 24 hours a day and 7 days a week, and must maintain a staffing ratio of one direct care provider for every two residents, David Depo. at 64:11–24, 76:7–77:15, 115:4–22, and plaintiff avers he responded to the needs of the residents whenever they arose during the day or night, and the residents frequently needed attention during the middle of the night. de Guzman Decl. ¶ 8; David Depo. at 183:17–25. Thus, there is a material fact in dispute regarding the number of hours plaintiff worked per day and each week that precludes granting summary judgment to defendants. See, e.g., Chao v. Jasmine Hall Care Homes, Inc., 2007 WL 2069932, *3–5 (E.D.Cal.) (denying summary judgment to defendants who invoked § 785.23 and finding "[g]enuine issues of material fact exist concerning how many hours the employees actually work ..., how much freedom the employees have to engage in personal pursuits during the day, whether the employees need advance permission to leave the premises, whether employees are able to get mostly uninterrupted sleep and when they do not, whether [defendants] instructed them to record any interruptions (so that they could get paid for them), and how much knowledge, if any, [defendants] have of any alleged 'overtime' the employees were clocking").

Lastly, "[w]here an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of § 207 [of the FLSA]." Forrester v. Roth's I.G.A. Foodliner, Inc., 646 F.2d 413, 414 (9th Cir.1981). Relying on this defense, defendants maintain they are entitled to summary judgment because no one ever informed David plaintiff had worked more than 8 hours in a day or more than 40 hours a week, and David never suspected plaintiff spent more than approximately 4 hours a day on his work duties. David Decl. ¶¶ 13–14. However, unlike the situation in Forrester, plaintiff has presented evidence showing David knew the days and hours he worked be-

cause **she** told him when he had to stay at the Home and what he had to do, de Guzman Decl. ¶ 15; she kept a room at the Home and frequently stayed there overnight, David Decl. ¶¶ 3, 13; de Guzman Depo. at 98:13–100:6; Gusilatar Decl. ¶ 11; and she acknowledged that sometimes employees worked overtime because it "couldn't be helped...." David Depo. at 181:13–21. Therefore, plaintiff has raised a triable issue of fact whether defendants were aware plaintiff worked overtime. *See Forrester,* 646 F.2d at 414 ("[A]n employer who knows or should have known that an employee is or was working overtime must comply with the provisions of § 207. An employer who is armed with this knowledge cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation."); *Holzapfel v. Town of Newburgh, N.Y.,* 145 F.3d 516, 524 (2d Cir.) ("[O]nce an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation even where the employee fails to claim overtime hours."), *cert. denied,* 525 U.S. 1055, 119 S.Ct. 619, 142 L.Ed.2d 558 (1998). For all these reasons, defendants are not entitled to summary judgment on plaintiff's FLSA claim.

### III

California law also sets hours and wages and provides for overtime pay, as follows:

> Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee.

Cal. Labor Code § 510(a). Furthermore, California law defines "hours worked" for employees in residential care facilities such as the Home,[3] as:

> the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so, and in the case of an employee who is required to reside on the employment premises, that time spent carrying out assigned duties shall be counted as hours worked. Within the health care industry, [[4]] the term "hours worked" means the time during which an employee is suffered or permitted to work for the employer, whether or not required to do so, as interpreted in accordance with the provisions of the Fair Labor Standards Act.

8 C.F.R. § 11050 ¶¶ 1, 2(K) (footnote added).

---

3. California regulations define the "public housekeeping industry" as a business that includes:

 [h]ospitals, sanitariums, rest homes, child nurseries, child care institutions, homes for the aged, and similar establishments offering board or lodging in addition to medical, surgical, nursing, convalescent, aged, or child care....

 8 C.F.R. § 11050 ¶¶ 1, 2(P).

4. "Health care industry" is defined as hospitals, skilled nursing facilities, intermediate care and residential care facilities, convalescent care institutions, home health agencies, clinics operating 24 hours per day, and clinics performing surgery, urgent care, radiology, anesthesiology, pathology, neurology or dialysis. 8 C.F.R. § 11050 ¶¶ 1, 2(J).

■ Since genuine issues of material fact exist regarding the characteristics of plaintiff's work, the hours plaintiff worked, whether plaintiff ever worked overtime, and, if so, how much overtime he performed, summary judgment for defendants is also denied on plaintiff's state law claims.

## IV

Finally, David contends plaintiff's claims against her fail as a matter of law because she cannot be held personally liable for plaintiff's wages. The Court disagrees.

■ "The definition of 'employer' under the FLSA is not limited by the common law concept of 'employer,' but 'is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes.' " *Lambert v. Ackerley,* 180 F.3d 997, 1011–12 (9th Cir.1999) (citation omitted), *cert. denied,* 528 U.S. 1116, 120 S.Ct. 936, 145 L.Ed.2d 814 (2000). Specifically, Section 203(d) defines an employer as "any **person** acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization." 29 U.S.C. § 203(d) (emphasis added). Thus, in determining whether a person is an employer, the Court applies the economic reality test. *Torres–Lopez v. May,* 111 F.3d 633, 639 (9th Cir.1997); *Morgan v. MacDonald,* 41 F.3d 1291, 1292 (9th Cir. 1994), *cert. denied,* 515 U.S. 1148, 115 S.Ct. 2591, 132 L.Ed.2d 839 (1995). Under this test, the Court must "consider the totality of the circumstances of the relationship, including whether the alleged employer has the power to hire and fire the employees, supervises and controls employee

work schedules or conditions of employment, determines the rate and method of payment, and maintains employment records." *Hale v. State of Ariz.,* 993 F.2d 1387, 1394 (9th Cir.), *cert. denied,* 510 U.S. 946, 114 S.Ct. 386, 126 L.Ed.2d 335 (1993).

■ Here, the undisputed evidence shows David is the President and Secretary of Parc Temple and owns 70% of Parc Temple; David hired plaintiff and set plaintiff's work schedule; David determined plaintiff's rate and method of payment, and signed the payroll checks to him on behalf of Parc Temple. Under these circumstances, David is an "employer" within the meaning of the FLSA. As an employer, the FLSA attaches personal liability "in the amount of the[ ] unpaid minimum wages, or the[ ] unpaid overtime compensation, as the case may be, and in an additional equal amount of liquidated damages" for FLSA violations.[5] 29 U.S.C. § 216(b); *see also,* e.g., *Chao v. Hotel Oasis, Inc.,* 493 F.3d 26, 34 (1st Cir.2007) (holding corporation's president personally liable when he had ultimate control over business' day-to-day operations and was corporate officer principally in charge of directing employment practices); *United States Dep't of Labor v. Cole Enter., Inc.,* 62 F.3d 775, 778–79 (6th Cir.1995) (person was employer within FLSA when president and 50% owner of corporation, ran business, issued checks, maintained records, determined employment practices, and was involved in scheduling hours, payroll, and hiring employees). Thus, David's motion for summary judgment on her personal liability is denied.

## V

■ Finally, defendants claim that since they made plaintiff a Rule 68 offer of

---

**5.** Having determined David may personally be held liable for plaintiff's wages under the FLSA, the Court declines to address whether David may also be held personally liable under state law.

judgment on July 3, 2007, and that offer was not accepted, they are entitled to partial summary judgment on plaintiff's claim for any attorney's fees after the offer. *See* Fed. R. Civ. p. 68(d) ("If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made."). This argument is without merit for numerous reasons, not the least of which is that "Rule 68 [does] not bar the plaintiff [ ] from recovering reasonable attorney fees for services rendered in [an] FLSA action after the Rule 68 settlement offer was made." *Haworth v. State of Nevada,* 56 F.3d 1048, 1051 (9th Cir. 1995).